WESTON, Respondent, vs. DAHL and others, Appellants.

*November 17, 1915—January 11, 1916.*

*Corporations: Stock subscriptions: Cancellation: Evidence: Increase of capital stock: Insufficient subscriptions: Personal liability for debts: Amendment of articles: Record: Certificate of register of deeds: Authentication: Oral promise not a subscription: Assignability of claims: Lost note: Bond of indemnity.*

1. The three organizers of a corporation subscribed for all of its capital stock—100 shares. Stock certificates were made out accordingly, but were never severed from the book, and across the

face of each certificate and its stub the words "Void, reissued," were written in red ink. There was no other corporate record of such cancellation. The following stubs showed that on the day of the subscription above mentioned fifty-one shares were issued to two of said subscribers. Afterwards other shares were issued, so that, prior to an increase of the capital stock to 250 shares, ninety-six shares in all had been issued. After such increase fourteen more shares were issued, making 110 in all. In an action under sec. 1774n, Stats. 1913, to enforce a personal liability of the officers and stockholders for debts incurred by the corporation, the evidence, including the uncontradicted testimony of the secretary—one of the original incorporators—that only 110 shares in all were ever subscribed for in writing, is *held* to sustain a finding by the trial court that the original subscriptions of 100 shares were in fact canceled and that, to the knowledge of the defendants, less than one half of the increased stock of the corporation had been subscribed for at the time the debts in question were incurred.

2. A copy, certified by the secretary of state, of his record of an amendment increasing the capital stock of a corporation duly authenticates for admission in evidence the attached certificate of the register of deeds which, by sec. 1774, Stats., must be filed with the secretary of state before he can issue the certificate of amendment.

3. Oral promises to take shares of stock in a corporation are not subscriptions and, under sec. 2308, Stats., cannot be enforced where the value of the stock exceeds $50.

4. Sec. 1774n, Stats.,—making the officers and stockholders of a corporation personally liable for debts contracted by it with their consent, while having knowledge that less than one half of the authorized capital stock has been subscribed or less than twenty per cent. thereof paid in,—creates a primary absolute liability at the time the debts are incurred, thereby imposing a contractual relation upon the stockholders instead of a penalty; and claims arising under it are assignable. *Killen v. Barnes*, 106 Wis. 546, distinguished.

5. Where a note given by a corporation for goods purchased was lost, recovery of the amount due thereon could not be had under sec. 1774n, Stats., against officers or stockholders of the corporation, unless plaintiff gave a bond of indemnity as provided by secs. 4190, 4191, Stats. 1913.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Modified and affirmed.*

Action under sec. 1774n, Stats. 1913, to enforce liability against defendants as officers and stockholders of the Ideal Light Company, a bankrupt corporation, for debts incurred by it with their consent and with the knowledge of the fact that less than one half of the increased capital stock of the corporation had been subscribed. Sixteen claims aggregating $1,472.11, upon which there had been paid as a dividend $224.04, had been assigned to plaintiff. The action was begun in the civil court and by consent tried without a jury. The court found the statutory facts showing liability on the part of the defendants and rendered judgment against them in the sum of $1,381.94 damages and costs. The circuit court upon an appeal by the defendants affirmed the judgment of the civil court, and from such judgment of affirmance the defendants appealed to this court.

For the appellants there was a brief by *Stuart H. Markham* and *Morris & Canright,* and oral argument by *Charles M. Morris.*

For the respondent there was a brief by *Alexander & Burke,* and oral argument by *Fred W. Barton.*

VINJE, J. The contentions of defendants that the capital stock of the corporation had not been increased from $10,000 to $25,000; that if it had, then more than fifty per cent. thereof had been subscribed; and that the guilty knowledge on their part requisite to their liability is wanting, were found against them by the trial court upon sufficient evidence to sustain the findings.

Only one or two claims relative thereto need be briefly treated. On December 15, 1910, *Albert S. Dahl* subscribed for 75 shares, *Erwin J. Spaar* for 24 shares, and *Fred W. Mueller* for 1 share. These three men were the organizers and president, secretary, and vice-president, respectively, of the corporation. Its capital stock at that time was $10,000, divided into 100 shares of $100 each. The whole stock was

subscribed for by these three officers.    The stock certificate
book shows the certificates made out as per subscriptions, but
they were never severed from the book.    Across the face of
each as well as on each stub of the book appear the words,
written in red ink, "Void, reissued."    Then follow stubs of
certificates showing that on December 15, 1910, *Dahl* had 29
shares issued to him, *Spaar* 22, and later certificates of stock
were issued as follows: December 30, 1910, *Dahl* 3; Janu-
ary 9, 1911, *Spaar* 5; January 30, 1911, *Dahl* 2; March 4,
1911, *Dahl* 1; March 14, 1911, *Dahl* 3; March 20, 1911,
*Dahl* 1; March 27, 1911, *Dahl* 2; April 8, 1911, *Dahl* 1;
February 6, 1911, *Spaar* 2; February 11, 1911, *Mueller* 5;
August 3, 1911, Anna Rupp 4; August 14, 1911, Oscar
Fleischer 10; December 8, 1911, *Mueller* 5; March 4, 1912,
*Dahl* 1.    These are all the certificates issued up to April 3,
1912, when an increase in capital stock to $25,000, consisting
of 250 shares of $100 each, was voted.    On that date stock
had been issued as follows: *Dahl* 43 shares; *Spaar* 29 shares;
*Mueller* 10 shares; Rupp 4 shares; and Fleischer 10 shares,
making 96 shares in all out of the 100 shares.    Later, after
the increase of the capital stock, 10 shares were issued to
*Dahl* and 4 shares to *Spaar,* making 110 shares in all, the
number the trial court found had been subscribed for.

Defendants claim that their subscriptions of 75 shares,
24 shares, and 1 share, respectively, made by them on De-
cember 15, 1910, should be counted.    This claim is nega-
tived (1) by the fact that the certificates therefor are marked
void and were never issued; (2) by the fact that if such
original subscriptions were not canceled there was an over-
subscription of twenty-eight shares long before the capital
stock was increased or before there was any idea of increasing
it, so far as the record discloses; and (3) by the fact that the
secretary, *Mr. Spaar,* testified that only 110 shares in all
were ever subscribed for in writing, including the 14 shares
issued after the increase of capital stock; that a list for fur-

ther subscriptions was started but nobody signed it. It seems quite evident that the trial court was justified in finding that the original subscriptions of 100 shares were in fact canceled, though there is no corporate action to that effect shown upon the records of the corporation except the recital in the certificate book. There is nothing to contradict such recital. On the contrary, subsequent corporate acts confirm its accuracy. It must be borne in mind that at the time of this cancellation the three defendants were the officers and only stockholders of the corporation, and they therefore did not proceed with the formality they otherwise would have done.

Plaintiff's right to recover was predicated upon the fact that one half of the stock was not subscribed for at the time the indebtedness was incurred. Notwithstanding this was the issue, *Spaar,* the secretary, testified that only 110 shares in all were subscribed for. This would be true only in case the first subscription of 100 shares was canceled. If it were not in fact canceled it would have been easy for the three defendants to so testify. They were all witnesses upon the trial, and yet neither claims that the certificates for 100 shares, duly made out and marked void, did not correctly indicate a cancellation of the first subscription; and neither *Dahl,* the president, nor *Mueller,* the vice-president, contradicts *Spaar's* testimony to the effect that only 110 shares in all were ever subscribed for. Upon the trial it was sought to show that valid oral subscriptions were made which, together with the amount of stock issued, satisfied the statutory requirement as to subscriptions. It was also sought to show that the capital stock had not been increased from $10,000 to $25,000 before the indebtedness was incurred, but proof failed as to both. The contention that the original subscription of 100 shares was not canceled is made, it is true, upon some evidence tending to sustain it; but if correct it could have rested upon actual proof of the fact by the testimony of the three defend-

ants to the effect that their subscriptions were not canceled. Their failure to so testify, taken in connection with the issue made and the other evidence tending to negative the validity of their original subscription, is, we think, a sufficient basis for the court's finding that one half of the stock of the corporation was, to the knowledge of the defendants, not subscribed for at the time the indebtedness was incurred.

Some objection was made to the competency in evidence of the certificate of the register of deeds attached to the certified copy of the record of the amendment of the articles of incorporation increasing the capital stock of the corporation, furnished by the secretary of state. Sec. 1774 requires such certificate to be filed in the office of the secretary of state before a certificate of amendment can issue. It was therefore a part of the record of the secretary of state and duly authenticated by his certificate attached to the record.

*Dahl,* the president of the corporation, testified that one Wilde orally promised to take ten shares of stock, and one Burwitz, by a like promise, agreed to take twenty shares. The trial court properly excluded such oral promises in determining the amount of stock subscribed. Oral promises such as were made to take stock are not subscriptions for stock within the meaning of the statute. They rested in parol, and by virtue of sec. 2308, Stats. 1913, could not be enforced.

The most important legal question raised by the assignment of errors is that plaintiff has no title to the claims assigned to him because, since the statute is a highly penal one, claims under it are not assignable. The section (sec. 1774n) reads:

"No amendment to the articles of any corporation, increasing the capital stock, shall be filed unless accompanied by the affidavit of the president and secretary that at least one half of the capital stock, including the proposed increase, has been duly subscribed and at least twenty per centum thereof actually paid in. The aforesaid officers and any other officer or stockholder consenting to the incurring of any debt or

liability by such corporation, while having knowledge that less than one half of the authorized capital stock has been subscribed or that less than twenty per centum thereof has been actually paid in, shall be personally liable upon the same."

It is argued that this section is as penal in its nature as is sec. 1765, Stats., under which claims were held nonassignable in *Killen v. Barnes,* 106 Wis. 546, 82 N. W. 536.    That section provides in substance that if directors of a corporation shall pay an unlawful dividend they shall be jointly and severally liable to the creditors of the corporation at the time of declaring such dividend to the amount of their claims. The two sections are radically different in their penalties, if sec. 1774*n* can be said to be penal in its nature.    Sec. 1765 gives creditors of a corporation relief far in excess of that occasioned by the wrong.    An unlawful dividend of but a few hundred dollars may be paid resulting in obligations that may amount to thousands of dollars.    Its violation transfers indebtedness of the corporation to the offending officers.    Its purpose is to punish an unlawful act.    On the contrary, sec. 1774*n* does not give creditors of a corporation damages in excess of that occasioned by the wrong, but only equal to it. The wrong is the creating of the indebtedness for which the offenders are held liable.    Hence their liability is measured by their wrongful act.    It creates a primary obligation upon them at the time the debt is incurred.    Its purpose is to give creditors of a corporation transacting business before it is by law authorized to do so primary recourse to those who wrongfully create the indebtedness on the part of the corporation. A violation of sec. 1773, Stats. 1913, which is quite similar in its provisions, has been construed to create a primary absolute liability on the part of the stockholders.    *Flour City Nat. Bank v. Wechselberg,* 45 Fed. 547.    The statute here imposes a contractual relation upon the officers and not a penalty in the strict sense of the term.    For that reason claims arising under it are assignable, and plaintiff was properly

permitted to maintain the action as owner of the assigned claims.

Among the claims assigned was a note for $152.80 given the Standard Metal Spinning Company for goods bought from it. The complaint as to this was for goods furnished the corporation. But it was admitted that a note had been given for the account and that the note was unpaid. It was not produced upon the trial and was claimed by plaintiff to have been lost. Defendants objected to the inclusion in the judgment of the amount of such note, but the trial court included it therein without requiring plaintiff to give a bond of indemnity as provided by secs. 4190, 4191, Stats. 1913. In this the court erred, and the judgment is directed to be modified by deducting this item unless the plaintiff shall within thirty days after filing the *remiltitur* execute and file the statutory bond, in which event the judgment is affirmed. The defendants are entitled to their costs upon this appeal.

*By the Court.*—Ordered accordingly.

KERWIN and TIMLIN, JJ., dissent.