SHADBOLT & BOYD IRON COMPANY, Appellant, vs. LONG and others, Respondents.

*October 21—November 16, 1920.*

*Corporations: Subscriptions to stock: Fifty per cent. actually subscribed: Effect of subsequent agreements: Oral subscriptions: Personal liability of stockholder: Form of action.*

1. An action to enforce the personal liability of subscribers to stock of a corporation under sec. 1773, Stats., on the ground that fifty per cent. of the stock had not been subscribed, is an action at law and is not governed by secs. 3223–3228.
2. Where there was testimony that two partners turned in their business to a corporation in return for $6,400 in stock, and at the first meeting of the stockholders agreed to subscribe for further stock, and fifty per cent. of the stock was subscribed at such meeting and the assets of the partnership delivered to the corporation, a judgment dismissing a complaint in an action by a creditor to hold stockholders personally liable because one half of the capital stock had not been subscribed will not be disturbed because of entries made in the stock books after the first meeting. The effect of the first subscription could not be changed by subsequent irregularities, mistakes, or new agreements.
3. An oral agreement to take $2,000 in corporate stock and a practically contemporaneous delivery of assets to the corporation in payment for $1,000 worth, is a single entire agreement, and the oral subscription was binding on both parties as to the $1,000 of stock not paid for. OWEN, J., dissents.

APPEAL from a judgment of the circuit court for Door county: A. H. REID, Judge. *Affirmed.*

This action was brought under sec. 1773, Stats., by a creditor of a bankrupt corporation, to enforce the personal liability of subscribers to stock, on the ground that fifty per cent. of the stock had not been subscribed as required by the statute.

The complaint alleged that the corporation had been duly organized in 1916 and had transacted business; that in 1917 it had become indebted to plaintiff for goods sold and the debt had not been paid; that the authorized capital stock was $20,000 and that fifty per cent. thereof had not been subscribed. The complaint then named the stockholders and the number of shares taken by them respectively; alleged the insolvency of the company, that there were many other creditors similarly situated, and that the action was brought also in their behalf; and prayed that the liabilities be determined and that the rights of all who should become parties be adjusted.

The answer admitted the formal allegations of the complaint, but alleged that at the first meeting fifty per cent. of the stock was duly subscribed and more than twenty per cent. had been paid before any business was transacted, and denied that it was necessary to resort to the statutory liability or that other creditors should be brought in.

In the fall of 1916 the defendants *Long* and *Hecht* were engaged in a garage business. They concluded to form a corporation and obtained certain subscriptions to stock, and a meeting of stockholders was held on December 29, 1916. At this meeting it was agreed that *Long* and *Hecht* should turn in their partnership business at a value of $6,400 in consideration for that amount of stock. At this point the conflict in the testimony arose.

It was claimed by the plaintiff that it was agreed that *Long* should receive $4,400 of the $6,400 of stock and *Hecht* $2,000, and that *Long* agreed to take an additional

$1,000 and to pay for it in cash. The defendants claimed that it was agreed at the meeting that *Long* should take $5,400 and *Hecht* $1,000 and that each agreed to take $1,000 more and pay cash for the same, thus making, together with the former subscriptions, fifty per cent. of the authorized capital stock.

Immediately after the meeting at which the mutual agreement was made the corporation took possession of the business and assets and continued until it became bankrupt. *Long* and *Hecht* made no written subscriptions to stock.

Several witnesses testified, in substance, to the effect that at this meeting each person was called on to state the amount of stock taken by him; that *Long* then said that *Hecht* had been worth $1,000 to him in the business and that he should have $1,000 of the stock to be issued for the partnership property, and that the remainder would be taken by himself. There was testimony that *Hecht* wanted a larger interest in the business and agreed to take $1,000 more. At the meeting of the subscribers there was considerable discussion as to whether there were subscriptions to the amount of fifty per cent., and the subscriptions oral and written were counted up and found, as they supposed, to be enough.

Soon after the meeting *Long* paid the corporation the $1,000 as agreed, and became entitled to $150 more of stock for unpaid salary. *Hecht* made no further payment.

*Long,* who seemed to be unfriendly to the other defendants, denied that it was the understanding that the stock to be allotted *Hecht* for his interest in the business was $1,000, but testified that it was to be $2,000 and that *Hecht's* interest in the business was equal to that amount.

By special verdict the jury found, in answer to three questions, (1) that at this meeting of subscribers it was agreed that in exchange for the partnership property $5,400 of capital stock was to be issued to *Long* and $1,000 to *Hecht;* (2) that at the meeting *Hecht* agreed to purchase

altogether 200 shares, being $2,000 of stock; (3) that *Long* agreed to purchase altogether 640 shares.

For the appellant there was a brief by *Kaftan & Reynolds* and *Minahan, Minahan, Minahan & Duquaine,* all of Green Bay, and oral argument by *Robert A. Kaftan* and *Hugh A. Minahan.*

*W. E. Wagener* of Sturgeon Bay, for the respondents.

JONES, J.    The first assignment of error is that the trial court held the action to be legal and not equitable.    The material part of the statute under which the action was brought is as follows (sec. 1773, Stats.):

"No such corporation shall transact business with any others than its members until at least one half of its capital stock shall have been duly subscribed; . . . and if any obligation shall be contracted in violation hereof, . . . the stockholders then existing, shall be personally liable upon the same."

It was urged that actions for the enforcement of liability under this statute must be governed as to practice by secs. 3223–3228.    Sec. 3223 provides:

"Whenever any creditor of any corporation shall seek to charge the directors, trustees or other officers or stockholders thereof on account of any liability created by law he may commence and maintain an action for that purpose in the circuit court and may at his election join the corporation in such action."

The other sections provide for the taking of an account; for ascertaining the liabilities of the directors or other officers and stockholders and enforcing the same by judgment; for the distribution of the property of the corporation; that the court shall compel each stockholder to pay in the amount due and unpaid on the share of stock held by him or so much as shall be necessary to pay the debts of the corporation; that if the debts of the corporation remain unsatisfied the court shall proceed to ascertain the liabilities of the

officers and stockholders, adjudge the amount due, and enforce payment. The statute further provides that the court may by injunction restrain proceedings by other creditors against the defendant; that the court may require all creditors of the corporation to exhibit their claims within a specified time or be precluded from any share in the distribution under the judgment. Provision is also made for discovery of stock and property belonging to the corporation and for adverse examinations of officers and stockholders as to transfers of property of the corporation.

Several classes of actions have come to this court under various statutes to enforce the statutory liability of stockholders: (1) the personal liability of stockholders in banks, (2) for unpaid subscriptions to stock, (3) for the indebtedness to laborers, (4) under sec. 1773, the statute in question, for liability because fifty per cent. of the stock had not been subscribed.

In the first three classes of cases it has been held by this court that the actions to enforce liability are equitable and that all the parties interested should be joined. In some of these cases, for example *Sleeper v. Goodwin,* 67 Wis. 577, 31 N. W. 335; *Gager v. Marsden,* 101 Wis. 598, 77 N. W. 922; *Kollock v. Scribner,* 98 Wis. 104, 73 N. W. 776; *Foster v. Posson,* 105 Wis. 99, 81 N. W. 123; and *Day v. Buckingham,* 87 Wis. 215, 58 N. W. 254, language is used by the court on which appellant's counsel rely as support for the proposition that actions based on sec. 1773 are also equitable and should be brought under sec. 3223, quoted above.

In the first of these classes of cases the liability of the stockholder is for the benefit of creditors generally to an amount equal to the stock held in addition to the amount invested in the stock, and the time of such liability is limited. The statute provides for the mode of bringing the action, and, under certain conditions, for the reimbursement of the stockholders. Sec. 2024—44, Stats.

The liability of a stockholder for unpaid subscriptions is limited to the amount unpaid. The amount unpaid as well as the amount paid is regarded as a trust fund pledged for the payment of the debts of the corporation. The liability of a stockholder for the debts to employees is limited to the amount of stock held by him, and is confined to six months' service by the employee. Sec. 1769, Stats. The liability for doing business before fifty per cent. of the stock is subscribed is different from that in any of these, because there is no limitation or qualification as to the liability of the stockholder. His liability is primary and absolute, not to the corporation, but to every creditor. It does not depend on the amount of the stock, nor the continued ownership of the stock, nor upon the solvency of the corporation. The statute in no way limits the period of the liability.

Although the precise question raised by this assignment of error does not seem to have been decided by this court, several actions have come before this court and been brought as purely actions at law. *Zwietusch v. Becker,* 153 Wis. 213, 140 N. W. 1056; *Weston v. Dahl,* 162 Wis. 32, 155 N. W. 949. The only case we have been referred to or have found which construes the statute in question is *Flour City Nat. Bank v. Wechselberg,* 45 Fed. 547. In an able and full discussion, JENKINS, J., held that the remedy at law is adequate and that the action need not be brought under sec. 3223, Stats. We quote from the opinion, page 551:

"The liability is not only primary and absolute, but attaches immediately upon the contracting of the debt by the corporation, maturing upon the maturity of the debt incurred. By the very terms of the statute, the liability is upon the stockholders existing at the time of the contracting of the debt. It does not involve those who may afterwards become interested. A transfer of stock would not acquit one of liability, nor transfer such liability to his successor in interest. So, also, liability is to the particular creditor, not to the body of creditors. It is measured by the amount of the debt, not by the amount the shareholder has at stake in the cor-

poration. It is a separate liability to each individual creditor. Its enforcement is not postponed to the ascertainment of the assets of the corporation, nor dependent upon the winding up of its affairs, or the insufficiency of corporate assets. It consists with the continued life of the corporation. The shareholder, compelled to respond to the creditor for the debt of the corporation, may or may not have an action over against the corporation. That is matter personal to the shareholder, with which the creditor is in no way concerned. Equity has here nothing to act upon. There is here no community of interest, no marshaling of assets, no distribution. The case involves no one subject of equity jurisdiction. It is a simple question of liability of one party to the other. The remedy at law is all-sufficient to the occasion. It is the one that should be pursued."

We hold that the trial court did not err in treating the action as one at law.

Counsel for the appellant claim that in order to make up the necessary one half of the subscriptions there must be counted 100 shares of stock for which it is claimed *Hecht* made a separate oral subscription and for which he never paid. It is urged that any agreement to take such shares was void and in violation of the statute of frauds. On the other hand, it is claimed by respondents' counsel that *Hecht* agreed to take only 200 shares, one half of which was paid by the delivery of his interest in the stock of goods, and that the sale of the partnership goods by *Long* and *Hecht* to the corporation jointly and the individual promises to take 100 shares each were all one contract. On the motion for judgment the trial judge said:

"It appears to the court that the statute of frauds was fully complied with so as to render the oral agreements to take stock valid. The agreement of *Hecht* to take $2.000 face value was not divided into parts so as to constitute two contracts. In effect he agreed to take 200 shares and pay for one half thereof by the immediate delivery of his interest in the partnership property, and pay for the other half thereof in cash later. His interest in the partnership

property was immediately put into the possession of the corporation."

On this branch of the case the jury found for the respondents. If the facts which occurred at the meeting of the stockholders on December 29, 1916, are controlling, there was clearly sufficient evidence to sustain the verdict. There is evidence tending to support the claim of appellant as to the main facts, consisting of entries in the stock-books inconsistent with respondents' claims. It also appeared that the number of stock certificates actually issued to *Hecht* and *Long* did not correspond with the claim of respondents as to the agreement of December 29, 1916. But no certificates were issued until several months after that meeting. All these facts were before the jury and the trial judge and we do not feel justified in setting aside the judgment, since if the agreement to take the requisite amount of stock was made at the meeting and was accompanied by delivery of the assets of *Long* and *Hecht* the effect could hardly be changed by subsequent irregularities or mistakes or new agreements.

There is much discussion in the briefs concerning oral subscriptions for stock and the statute of frauds. In view of the conclusion we have reached as to the facts it does not seem necessary to enter upon a discussion of those subjects. The oral agreement to take the stock and the delivery of compensation for it were practically contemporaneous. All parties and the corporation acted upon the arrangement in good faith. As part of a single entire agreement one of the owners of the assets to be turned over agreed to take $1,000 in stock for which he never paid. The agreement was accepted and acted upon by the corporation. If action had been brought upon the promise he could not have repudiated it. There are conflicting decisions as to the validity of oral subscriptions to stock, but we have found none inconsistent with our conclusion, which is that on the facts found the required amount of stock was subscribed.

*By the Court.*—Judgment affirmed.

OWEN, J. (*dissenting*).   I regret that more considera-
tion was not given the question of whether an oral sub-
scription to the capital stock of a corporation satisfies the
requirement of sec. 1773, Stats.   The trend of authority is
to uphold the validity of such oral subscriptions, but it is
recognized that the charter or governing statute may re-
quire the subscription to be in writing.   1 Thompson, Corp.
(2d ed.) § 573; 14 Corp. Jur. 519.   A consideration of the
phraseology and obvious purpose of sec. 1773 convinces me
that it requires actual written subscriptions of fifty per cent.
of the capital stock before the corporation is permitted to do
business with third parties.   Until that time it shall not
"transact business with any others than its members;" it is
not a completely organized corporation; it does not come
into possession of its corporate powers or privileges.   Until
that time the stockholders shall be personally liable for any
obligations incurred.   Manifestly the interest not only of
the public but of existing stockholders requires the existence
of definite record evidence of whether the organization has
so far progressed as to constitute it in all respects a cor-
poration in truth and in fact.   To permit the establishment
of that fact to depend upon the uncertainties of parol testi-
mony and the vacillations of successive juries is a slipshod
policy.

The verdict of the jury in this case rests upon very un-
satisfactory evidence.   In an action by another creditor the
jury is more than likely to find the other way.   Is it pos-
sible that the legislature intended that the question of
whether a corporation is fully organized and is entitled to
transact business should rest in such uncertainty?   I think
not, and I think this court plainly said so in *Weston v. Dahl*,
162 Wis. 32, 155 N. W. 949, where, of a similar subscrip-
tion, it said: "Oral promises such as were made to take stock
are not subscriptions for stock within the meaning of the
statute."   It is true that following this statement it is said:
"They rested in parol, and by virtue of sec. 2308, Stats.

1913, could not be enforced." This does not seem to have been intended as an explanation or modification of the first proposition, but rather as an additional reason for declaring the oral subscriptions invalid.

No good purpose will be subserved by a prolonged discussion of the subject. Suffice it to say that, in my judgment, the legislature intended that the subscriptions to the capital stock should be in writing and preserved among the records of the corporation, affording those interested, the stockholders as well as the public, definite information as to its corporate status. It well may be that an oral stock subscription is valid under certain circumstances, so that it may be enforced at the suit of the corporation, when it is not valid for the purpose of affecting the corporate status. As to that I express no opinion.

I may add that in my judgment there is no evidence in the case of part performance so as to take *Hecht's* oral subscription for the $1,000 of the stock out of the statute of frauds. That was an individual subscription wholly apart from the sale of the partnership assets to the corporation. The sale of those assets did not constitute a part performance of *Hecht's* individual contract, and if the statute of frauds is applicable the transaction was invalid. For these reasons I dissent.