## COLCORD v. GRANZOW et al.

No. 17807—Opinion Filed March 27, 1928.

Rehearing Denied July 2, 1929.

Everest, Vaught & Brewer, W. F. Harn and Keaton, Wells & Johnston, for plaintiffs in error.

Hayson & Lukenbill, for defendants in error H. E. Beemblossom and Estelle Beemblossom Baker.

Twyford & Smith, for defendants in error H. W. Granzow, C. F. Woodward, J. H. Hoback, G. W. Campbell, Victor Peterson, C. W. Callerman, Alfred Smith, and Nellie W. Woodward.

Rittenhouse, Lee, Webster & Rittenhouse, for defendant in error M. M. Ashton.

JEFFREY, C. This is a suit by certain creditors of a dissolved corporation against certain directors of the corporation by reason of the fact that said directors created the indebtedness sued upon in excess of the subscribed capital stock of the corporation as provided by section 5336, C. O. S. 1921. H. W. Granzow, C. F. Woodward, J. H. Hoback, G. W. Campbell, Victor Peterson, C. W. Callerman, and Alfred Smith joined as plaintiffs in the petition, and named as defendants, C. F. Colcord, J. J. Culbertson, K. W. Dawson, W. F. Harn, D. F. Sparrow, S. L. Brock, O. G. Lee, and Orin Ashton, directors of the State Capitol Building Company, a corporation, dissolved, and also H. E. Beemblossom and Estelle Beemblossom Baker, who also were creditors of said dissolved corporation but refused to join as plaintiffs in the suit. M. M. Ashton, who also was a creditor, intervened as a party plaintiff. A separate cause of action was pleaded for each of the plaintiffs, and the prayer of said petition asked for judgment on each of said causes of action for the amount therein pleaded in favor and for the benefit of such respective plaintiff. The petition discloses that some of the parties had reduced their claims to judgment prior to the dissolution of the corporation, but others had not. The original indebtedness of each of the plaintiffs was represented by promissory notes, and evidenced a balance due on the purchase price of certain lands conveyed to the corporation. The same is true of the defendants H. E. Beemblossom and Estelle Beemblossom Baker, who filed cross-petition asking judgment against said directors, and

will hereinafter also be designated as plaintiffs. All plaintiffs asked for interest at 8 per cent. from date of the various notes as provided thereby until June 20, 1922, the date of dissolution of the corporation.

If the statute of limitations is applicable in this character of case, all claims of plaintiffs, including both the judgments and notes, were barred by the statute prior to the dissolution of the corporation. The corporation was dissolved June 20, 1922.

This suit was commenced on the 18th day of September, 1922 The cause was tried to the court on the 19th day of October, 1925. At the conclusion of all the evidence, all parties joined in a request for findings of fact and conclusions of law. Defendants submitted, in writing, findings of fact and conclusions of law on all questions, and requested their adoption, which was denied by the court, and other findings and conclusions of law were made and entered by the court, and judgment was rendered thereon in favor of plaintiffs and against the defendants C. F. Colcord, K. W. Dawson, W. F. Harn, and Orin Ashton on each cause of action for the full amount therein prayed for. The defendants Colcord, Dawson, and Harn have appealed. Numerous assignments of error are made, but are argued under certain propositions of law, which seem to cover all serious questions raised in this court.

The first proposition urged by defendants is as follows:

"To have a legal corporate existence, a private corporation must be organized for some authorized purpose."

Under this proposition, it is contended that the State Capitol Building Company never had a corporate existence; and that a corporate existence was a prerequisite to the statutory liability of the directors. The purposes for which the company was organized, as shown by its articles of incorporation, are as follows:

"To promote the building of a State Capitol at the intersection of Twenty-second (22nd) street extended and Lincoln Boulevard in Oklahoma City, Oklahoma county, state of Oklahoma, as contemplated in the act of the Legislature of the state of Oklahoma, providing for the location of such Capitol at Oklahoma City; to acquire by purchase, gift, donations or devise, and to hold for the purposes hereinafter mentioned, real estate in or as additions to Oklahoma City, and to lay out and plat the same into streets, alleys, lots and blocks, and to sell and dispose of the lots and blocks so surveyed, laid out and platted, for the purpose of providing a fund for the construction of said building; to act as trustee for the donors of such fund, and for the state of Oklahoma; and to do generally such other and further business, and have such other and further powers as are necessary or desirable, to effectuate and carry out the above purposes."

Section 5301, C O. S. 1921, provides that private corporations may be formed for a number of purposes, one of which is:

"For the purpose of locating, laying out, improving town-sites, and buying and selling real estate therefor, including the sale and conveyance of the same in lots, subdivisions or otherwise."

Defendants say that if the State Capitol Building Company ever had a legal corporate existence, it was a public or quasi public corporation, and created by virtue of Senate Concurrent Resolution No. 8, Session Laws 1910-1911. With this we canot agree. This resolution incorporated a proposal from the defendants and a number of other persons wherein it was proposed that the State Capitol Building Company would be organized, under the laws of the state of Oklahoma, with a capital stock of $1,000 divided into 100 shares of the par value of $10; that said corporation would acquire, plat, subdivide, and sell real estate within the near proximity of the Capitol site, proposed to be established at the intersection of Lincoln boulevard and Twenty-second street in the city of Oklahoma City, for the purpose of raising a fund in the sum of $1,000 000 to be donated the state for the erection of the Capitol Building, on condition that the same should be established and located at said point. The resolution in no manner attempts to create this corporation or to provide for its creation. The articles of incorporation in no manner bring it within the terms of section 5296, C. O. S. 1921, which defines public corporations. Section 5297, C. O. S. 1921, provides that all corporations not public are private. If the State Capitol Building Company had a corporate existence, the authority therefor must be found in section 5301, C. O. S. 1921. It will be noticed that a part of the purposes for which the company was attempted to be organized, as set forth in its articles of incorporation, to wit:

"* * * To acquire by purchase, gift, donations or devise, and to hold for the purposes hereinafter mentioned, real estate in or as additions to Oklahoma City, and to lay out and plat the same into streets, alleys, lots and blocks, and to sell and dispose of the lots and blocks so surveyed, laid out and platted * * *"

—are very similar to that portion of sec-

tion 5301, C. O. S. 1921, above quoted. To this extent and for this purpose the law authorized the incorporation of the company. It is the other purposes therein named, and the purposes for which the company proposed to use its income, that raise the question as to its right to corporate existence under the law. In the case of Staacke v. Routledge (Tex. Civ. App.) 175 S. W. 444, a corporation was organized and chartered for the purpose of maintaining stage lines, mercantile business, and renting automobiles with drivers. The statutes of Texas did not authorize the formation of corporations for renting automobiles with drivers, but that was the business engaged in by the corporation at the time of the injury about which the suit arose. The court held that that provision in the charter was void; but the fact that the charter contained a power not authorized by law did not render the entire charter void, but such unauthorized powers would be regarded as surplusage. Text-writers have recognized the soundness of this rule. If the articles of incorporation contain a power or privilege authorized by law, and also include other powers or privileges not authorized by law, the law will reject the excessive powers or privileges as surplusage and void, but the additional matter will not vitiate the legitimate part of the articles. Cook on Corporations (6th Ed.) vol. 1, p. 16, sec. 4; Fletcher, vol. 1, p. 385; 14 Corpus Juris, 139. The texts are well sustained by judicial decision. Shick v. Citizens' Enterprise Co. (Ind. App.) 44 N. E. 48; State v. Anderson, 31 Ind. App. 34, 67 N. E. 207; Pittsburgh, S. & N. R. Co. v. Keating & S. R. Co. (Pa.) 81 Atl. 935; Holmes Electric Protective Co. v. Armstrong, 162 N. Y. S. 770; Shoun v. Armstrong (Tenn. Ch. App.) 59 S. W. 790.

Under the above authorities, all powers attempted to be assumed, except that to acquire, hold, sell, lay out and plat real estate, and the powers necessary and incidental to the business of the town-site company, are surplusage and void. That it was the original purpose of the company to plat such lands as may be acquired by it into lots, blocks, streets and alleys as a part or additions to Oklahoma City, and to sell the same for town-site purposes, is conceded by counsel for defendants. But it is urged that the main purpose for operating as a town-site company was to raise funds with which to erect the State Capitol Building, all of which plainly appears from the charter itself; that this purpose is not authorized by law; and that the charter is therefore void. The articles of incorporation as well as

other evidence in the case show that the incorporators proposed to use the income from its town-site business as a donation to the state of Oklahoma for the purpose of building a State Capitol, to the extent of $1,000,000. We see no reason why the purpose for which the income was intended to be used, as in this case, would in any manner affect the corporate existence of the organization. If the company had succeeded in making its donation of $1,000,000 to the state of Oklahoma, and then continued to buy land, establish and sell town sites, the purpose for which its income was used would then not enter into the question. Corporation may donate money or property to any one for any legitimate purpose except that prohibited by law. We think the company had a legal de jure corporate existence as a town-site company.

The next proposition presented is:

"Conceding, for argument's sake, that the State Capitol Building Company was a legal corporate entity, then the alleged contracts and notes sued on, being made and given for the purchase of agricultural lands, are ultra vires and void."

A discussion of this proposition necessitates a further statement of facts. In consideration of the location of the State Capitol Building at the intersection of Lincoln boulevard and Twenty-Second street in the city of Oklahoma City, the incorporators together with a number of other persons proposed to donate to the state, as a site for the Capitol Building and Governor's mansion, 15 acres of land, and the sum of $1,000,000 to be raised by and through the State Capitol Building Company, to be organized, by the sale of real estate in various additions in and about Oklahoma City, many of which were to be located and laid out by said corporation. The defendants herein, who were among the incorporators of said company, and later directors, together with a number of other persons, entered into a bond in the sum of $100,000, payable to the state of Oklahoma, and conditioned upon a faithful performance of the proposals made and accepted by the Legislature and the Governor. In 1911, it was discovered that the $1,000,-000 could not be raised in the manner proposed, and the directors of the corporation asked to be relieved from their contract with the state upon partial performance thereof. An agreement was then reached whereby all parties to the contract would be relieved from further liability upon the payment of $100,000, the amount of said bond, in cash, and the conveyance of 650 acres of land to the state. The corporation lacked

about 200 acres of having the 650 acres required. Through its officers and agents it bought various tracts of land from the plaintiffs herein with which to make up the additional acreage, and gave promissory notes to the grantors for the greater part of the purchase price of said land.

It is contended by the defendants that the purchase of the various tracts of land from plaintiffs was beyond the power and authority of the corporation, prohibited by section 2, art. 22, of the Constitution, and section 5323, C. O. S. 1921, and therefore ultra vires and void. Section 5323, supra, is a re-enactment of the Legislature of the above constitutional provision, and is as follows:

"No corporation shall be created, licensed, or chartered in this state for the purpose of buying, acquiring, selling, trading, or dealing in real estate other than real estate located in incorporated cities and towns, and as additions to such cities and towns; nor shall any corporation doing business in this state buy, acquire, sell, trade, or deal in real estate for any purpose, except such lands as may be located in incorporated cities and towns and as additions thereto. * * *"

Reference must again be had to that part of section 5301 hereinabove quoted. This provision authorizes this corporation to locate, lay out, and improve town sites; and to buy and sell real estate therefor, including the sale and conveyance of the same in lots, subdivisions or otherwise. These powers are excepted from the constitutional and statutory inhibitions herein quoted. Sections 5301 and 5323 should be read together. Under the statute, a town-site company is not limited to buying additions already platted and improved; but the plain terms thereof authorize the purchase of unimproved or farm land for the purpose of locating, laying out and improving town sites located in incorporated cities and towns and additions thereto. The statute further authorizes town-site companies to buy and sell real estate for town-site purposes, including the sale and conveyance of the same in lots, subdivisions or otherwise. This could mean nothing else than that a town-site company may purchase unimproved land, and if it found it advantageous to do so, it might sell the whole of the tract unimproved. The evidence shows that the various tracts of land purchased were located at a distance of three to six miles from the Capitol site and where the Capitol now stands; and also that distance from the city limits. Two of the tracts thus purchased were already platted as additions to Oklahoma City. The remaining tracts were unimproved.

Under the holding in the case of Crowder State Bank v. Aetna Powder Co., 41 Okla. 394, 138 Pac. 392, and later decisions of this court following the doctrine therein announced, contracts, if ultra vires in the sense that they are beyond the powers of the corporation to make and perform, cannot be enforced according to their terms, in the face of a plea of ultra vires, but the action will be treated as one upon an implied contract to repay to the extent of benefits received. The contracts here are not such contracts. No authority has been cited which deals directly with a state of facts like the one in hand, and we have been unable to find such an authority. The corporation had power and authority to buy such tracts of land, and whether it transcended any of its charter powers in disposing of the land should make but little difference, in so far as the rights of its creditors are concerned. It is urged that plaintiffs knew, at the time they deeded their lands to the corporation, that the corporation was taking it for the purpose of deeding it to the state of Oklahoma,. and for this reason the contracts sued upon are ultra vires. We cannot agree with this contention. From the evidence, it may be inferred that the grantors of the land were informed that the corporation intended to convey to the state of Oklahoma. The grantors probably knew that the corporation intended to convey to the state of Oklahoma 15 acres of land, upon which the State Capitol Building now stands, and other tracts to the city of Oklahoma City for park purposes. We see nothing ultra vires in these transactions, and the evidence discloses no knowledge on the part of plaintiffs, at the time they parted with their lands, that they were participating in any illegal, immoral or improper transaction whatever. The courts have held that, even though the corporation had no authority to buy and hold land, if they did so and later conveyed the same, such conveyance passed valid title to the land. State v. Benevolent Inv. & Relief Assn., 107 Okla. 228, 232 Pac. 35. Even if the grantors had information that the land was to be used or disposed of in a manner not strictly authorized by the charter, this in itself would not render the sale to the corporation ultra vires and void. The corporation was not organized for, nor had it engaged in, the business of buying and selling agricultural lands as contemplated by section 5323, supra. On the contrary, it had platted and sold out other additions, which were located without the corporate limits of the city. The

corporation had authority, by virtue of law and its charter, to buy the land, and give its notes for the purchase price; and having done so and deeded the land away, it was liable on the purchase notes.

It is next contended that plaintiffs are estopped to maintain this action against the directors since plaintiffs were privy to, and participated in, the acts of the directors in creating debts beyond its subscribed capital stock. The authorized capital of the corporation was only $1,000. The purchase price of each tract of land was in excess of the authorized capital stock. It is urged that plaintiffs were charged with notice of the contents of the articles of incorporation; that they knew at the time the debts were created that each and all of them were in excess of the subscribed capital stock; and that they are therefore estopped to maintain this action. The evidence shows that solicitors or agents were sent out by the corporation to call upon plaintiffs and endeavor to buy the real estate needed. These agents were armed with a financial statement of the corporation, over the certificate and signature of the president and secretary, and the seal of the corporation, showing that said corporation had assets in the total sum of $64,825. This representation was made to the prospective grantors for the purpose of inducing them to convey the lands without retaining a mortgage lien thereon, so that the corporation could convey to its purchaser clear and unincumbered title. There appears to have been no declarations made or given by plaintiffs leading up to the transfer of the lands that would operate as an estoppel by contract. And if estoppel by conduct, misrepresentation, or an equitable estoppel may be invoked, it must be shown that the corporation acted upon such conduct or representations to its prejudice; or by reason of such representations or conduct the corporation was induced to change its position so that to now demand performance under the contracts would amount to an injustice and an injury to the corporation's rights. Flesner v. Cooper, 62 Okla. 263, 162 Pac. 1112; St. Louis & S. F. R. Co. v. Mann, 79 Okla. 160, 192 Pac. 231; Tidal Oil Co. v. Flannagan. 87 Okla. 231, 209 Pac. 729. We think the doctrine of estoppel has no application to the facts in this case.

As was said in the case of Rogers v. Bonnett, 2 Okla. 553, 37 Pac. 1078, section 5336, C. O. S. 1921, was undoubtedly passed by the Legislature for the purpose of protecting persons who enter into engagements with corporations from being imposed upon.

The inhibitions of the provisions are against the directors of the corporation, and none other. No duty rests upon third persons to see that the corporate business is safely and properly managed, and of course the statute does not attempt to say what persons, other than the directing officers of a corporation, shall not do with reference to the corporate business. A contract creating indebtedness in excess of the subscribed capital stock of a corporation is not illegal and void as to the creditor. The statute recognizes the validity of the contract for the purpose of suit by providing that the directors shall be liable individually to the full amount of the debt so contracted, and places no condition on the right to enforce liability such as here contended for. If plaintiffs were charged with knowledge of the authorized capitol stock of the corporation, of the statutory inhibitions against directors, and courts would not lend aid in enforcing contracts of this character, such would tend to defeat the primary purpose of the statute, and place a premium upon the directors' wrongdoing.

It is next contended by defendants that section 5336, C. O. S. 1921, under which the directors' liability is sought to be established, is highly penal and must be strictly construed in favor of the alleged offending directors. That section, in so far as applicable here, is as follows:

"The directors of corporations must not make dividends except from the surplus profits arising from the business thereof, nor must they divide, withdraw, or pay to the stockholders, or any of them, any part of the capital stock; nor must they create debts beyond their subscribed capital stock, or reduce or increase their capital stock, except as specially provided by law. For a violation of the provisions of this section, the directors under whose administration the same may have happened (except those who may have caused their dissent therefrom to be entered at large on the minutes of the directors at the time, or were not present when the same did happen), are, in their individual and private capacity, jointly and severally liable to the corporation, and to the creditors thereof, in the event of its dissolution, to the full amount of the capital stock so divided, withdrawn, paid out, or reduced, or debt contracted; and no statute of limitations is a bar to any suit against such directors for any sums for which they are made liable by the section."

Under the above proposition, it is argued that the statute does not impose liability against a director unless it is shown that such director was present at the meeting of

the board of directors, or a majority thereof, and took affirmative action in the creation of the indebtedness. Defendants also say that the evidence does not justify the trial court's finding that defendants, as directors, had anything to do with the creation of the indebtedness in question; and that evidence of ratification is not sufficient to establish liability. As to whether the statute in question is a penal or a remedial one in the limited sense, we think, makes no difference. It is certainly remedial as to the creditors. It affords them a remedy against the directors for debt. We may concede that the statute is, at least in a sense, penal in its nature as to the directors, as was said in Rogers v. Bonnett, supra, but this will not lead to the conclusion sought by the directors. The rule of strict construction, as applied to statutes, does not mean that words shall be so restricted as not to have their full meaning, but merely means that everything shall be excluded from the operation of the statutes so construed which does not clearly come within the meaning of the language used. 25 R. C. L. at page 1076 says:

"The rule of strict construction comes into play only when the language, after analysis and subjection to the ordinary rules of interpretation, presents ambiguity."

And, again, in the same volume, at page 1084, it is said:

"The rule of strict construction of a penal law is subordinate to the rule of reasonable, sensible construction, having in view effectuation of the legislative purpose, and is not to be so unreasonably applied as to defeat the true intent and meaning of the enactment."

The statute here in question is clear and unambiguous to the extent that directors who attend a meeting of the board of directors of a corporation, at which meeting the board creates indebtedness in excess of the subscribed capital stock of the corporation, unless such director causes his dissent therefrom to be entered at large on the minutes of the directors, shall be liable to such creditors to the full amount of the debt contracted. Since we think the evidence is sufficient to show this state of facts as to the defendant directors, we deem a further discussion, as to whether the act is penal or remedial and whether it should be strictly or liberally construed, unnecessary.

With reference to the sufficiency of the evidence, the record discloses that in December, 1911, a meeting of citizens of Oklahoma City was held in the Chamber of Commerce room in the Colcord Building, which meeting was attended by the defendants and several other directors of the corporation. A motion was made and unanimously carried instructing C. F. Colcord, who presided at said meeting, to appoint a committee to secure options on approximately 200 acres of land to comply with the request of the Governor, and to make up the full 650 acres hereinbefore referred to. The chairman appointed J. L. Francis, C. F. Woodward, and W. H. Clark. The committee was furnished by the secretary of the corporation with typewritten forms of options providing for the sale of land to said corporation, and thereafter J. L. Francis and C. F. Woodward secured options signed by most of the plaintiffs herein. The options, after being signed by plaintiffs, were returned to the office of the corporation, and there signed by the secretary on its behalf. The options were written agreements between the State Capitol Building Company and the respective grantors with warranty deeds to the land attached, and provided that said deeds should be held by the American National Bank pending the result of an election, which was to be held in Oklahoma City for the purpose of voting $100,000 in bonds for the purchase of a park site from the State Capitol Building Company. The options provided further that if said bonds carried, and the consideration paid for the park site, the deed should be delivered to the corporation, and the grantors paid one-third of the consideration therein named, and the State Capitol Building Company to give its notes for the balance of the purchase price. Thereafter, and on January 2, 1912, the directors of the corporation held a meeting, and the minutes disclose that all of defendants were present; that the secretary was instructed to proceed at once to collect donation notes, which were in the possession of the company; and that the proceeds of such notes be used for the purchase of the lands under option for the purpose of substitution as agreed upon by the Governor of Oklahoma. Again, on February 22nd, another meeting of the board of directors was held, at which all of the defendants were present, and the secretary was instructed to notify said persons, who had signed said options, to prepare their abstracts and be prepared to close said options as soon after the 1st of March as possible. The section of the statute under consideration provides that for a violation of the provisions thereof, the directors under whose administration the same may have happened (except those who may have caused their dissent therefrom to be entered at large on the minutes of the directors at the time, or were not present when the same did happen) are, in their individual and private capacity, jointly and

severally liable to the creditors, in the event of dissolution. Several authorities are cited which construe statutes of other states which seem to hold that the directors must have assented to the creation of the debt; and that merely recognizing or ratifying it later is not sufficient in order to hold the directors liable. In the face of the plain language of the statute, we doubt if the statute should be given this narrow and limited meaning; however, the evidence shows more than ratification of the debts in question. If there was such a meeting in December, 1911, of the board of directors at the Chamber of Commerce room where the citizens' meeting was held, the debt may have been created at that time. If the debt was not created at that time by a vote to secure options on the land, then none existed against the corporation to be ratified on January 2, 1912. If no valid debt had been created against the corporation prior to January 2, 1912, certainly the directors authorized the creation of the debts at that time. It is true that the minutes of the January 2nd meeting did not disclose any action of the board with reference to signing notes, but the minutes do show that the secretary was ordered to use the money collected from donation notes for the purchase of the lands under option. The options referred to provided that only one-third of the purchase price should be paid in cash, and the balance was to be evidenced by promissory notes. At two directors' meetings thereafter, to wit, on February 22nd, and March 20th, action was taken with reference to the land transaction. On February 22nd, the secretary was instructed to notify the persons who had signed the option contracts to prepare their abstracts and be prepared to close the options as soon after the 1st of March as possible. On March 20th, the secretary was instructed to deliver the abstracts, furnished by said optionors, to the Attorney General of the state of Oklahoma for examination. Thereafter the deeds were delivered to the State Capitol Building Company, and the State Capitol Building Company made its cash payment on the purchase price for the various tracts of land, and executed and delivered its notes to the grantors for the balance of the purchase price. It does not make any difference whether the indebtedness was created at one meeting or during several meetings, or, if at one meeting, which one. The evidence is overwhelming that the indebtedness was created during the administration of the defendants, who were directors at one or more of the directors' meetings, at which all of the defendants were present, and none of them caused their dissent to such action to be entered on the minutes.

One of the judgments in favor of plaintiff C. F. Woodward was based upon four small donation notes which had been given the corporation and assigned to him. The notes contained the indorsement of the corporation by Ed S. Vaught, its attorney, with the seal of the corporation attached. Defendants say that there was no evidence to support the judgment upon these notes, and especially in that there was no showing that Mr. Vaught had any authority to make such assignments. Mr. Vaught, in addition to being the legal attorney for the corporation, was a member of the board of directors and of the executive committee. The notes were fully pleaded. The petition alleged that the notes were purchased for value before maturity and had copies thereof showing the indorsement attached thereto. Defendants did not deny the execution and indorsement under oath, either by pleading or evidence, and it would certainly seem that they are not now in position to question the authority of the assignments especially in view of the presumption to which such an indorsement is entitled. An executed contract, which bears the signature of the corporation and its officers under the seal of the corporation, is usually presumed to have, in fact, been made and executed by the corporation, and, also, that its officers had power to make it. Wisconsin Lumber Co. v. Green, etc., Co., 127 Iowa, 350, 101 N. W. 742; Emory v. Bailey, 111 Tex. 337, 234 S. W. 660.

The trial court allowed judgment for plaintiffs for attorneys' fees in the amount provided for in the various notes. This is assigned as error. The case of Thomas v. Wentworth Hotel Co. (Cal.) 117 Pac. 1041, is relied on as authority for this position. It was there held that even though a board of directors authorized its managing officers to borrow money and to execute promissory notes therefor, but did not expressly authorize such officers to contract to pay attorneys' fees in the event suit was brought on the notes, such a provision written in the note could not be enforced against the corporation. In the Thomas Case, supra, it was said that by the resolution authorizing the president and secretary to execute promissory notes, they were authorized to execute notes which would contain all usual and customary terms and conditions, but that the court could not take notice of the fact, if it be a fact, that it is usual and customary for such notes to contain a contract for the payment of attorneys' fees, in the event of suit. We would not feel bound or justified

in following the holding of that case as a general proposition. However, the liability of directors, under the statute, is limited to the amount of debts created by such directors in excess of the subscribed capital stock. The option contracts, frequently referred to in the minutes of the directors, do not include a provision for attorney fees, nor was there any evidence that the directors ever authorized such provision, or that it was even mentioned. We are of the opinion that the directors cannot be held liable for attorney fees, as in this case.

It is next contended that none of the special or call meetings of the board of directors of the State Capitol Building Company were legally constituted so that the proceedings taken thereat were binding upon any of the participating members of the board of directors; and that this is shown by both the undisputed evidence and the finding of the trial court. The evidence shows, and the trial court found, that with the exception of the meetings held December 23, 1910, and January 10, 1911, none of the meetings of the board of directors were held upon the regular meeting day as fixed by the by-laws, nor was any special meeting called in writing by the president or vice president; nor was written notice of any meeting given to the directors as provided by said by-laws. The corporation, through its directors, seemed to have transacted a great deal of business over a period of about one year, and no attempt was made to comply with the by-laws with reference to giving notice in writing of special meetings to the directors. In the case of Cummings v. Wallower, 47 Okla. 624, 149 Pac. 864, it was said that the function of a by-law is to prescribe the rights and duties of the members with reference to internal government of the corporation, the management of its affairs, and the rights or duties existing between the members inter se. See, also, 14 C. J. 344. The same rule does not apply to third persons or strangers, especially in the absence of a showing that such third person had knowledge of the by-law. 14 C. J. 348. In favor of a third person, a corporation may waive the provisions of a by-law. 14 C. J. 349. Thompson on Corporations (2d Ed.) vol. 1, p. 1279. Fletcher or Corporations, sec. 1894, p. 3081, makes the following pertinent statement:.

"Thus, want of notice of a special meeting to one or more directors does not affect the validity of acts or contracts of the corporation at such a meeting, so far as third persons dealing with the corporation are concerned, since they have a right to assume that the meeting was regular."

It would be inequitable and unjust to place upon third persons, dealing with a corporation, the duty of first ascertaining whether the directing officers had complied with its own regulations adopted for its own convenience and safety.

Defendants contend that each of the causes of action alleged by plaintiffs was barred by the statute of limitations as against the State Capitol Building Company, prior to its dissolution, and is therefore barred as against these defendants. Counsel cite several authorities to the effect that the directors can only be held liable for debts which are valid claims against the corporation and enforceable in the courts. None of the authorities cited go to the extent of holding that the statute of limitations is available to the directors in an action under a statute containing such provisions as are found in the one under consideration. The proviso is that no statute of limitations is a bar to any suit against such directors for any sums for which they are made liable by this section. We need not consider what effect a plea of the statute, in favor of the corporation in an action on these claims prior to dissolution, would have here. It is sufficient to say that no such plea was made on behalf of the corporation, and cannot be made now. It would seem that the very purpose of the proviso would be defeated by a construction which would permit the statute of limitations to operate in favor of the directors under any circumstances. The language of the proviso is definite and clear that the statute of limitations shall not be available to the directors in a suit of this kind, and we feel bound to so treat it. Willard v. Dobbin, 191 Cal. 287, 216 Pac. 1008.

The defendants demurred to plaintiffs' petition, among other grounds, because of a misjoinder of parties plaintiff, and the improper joinder of several separate and distinct, pretended causes of action. The demurrer was overruled, and this ruling is assigned as error. Defendants excepted to the ruling of the court, filed an answer, and the cause was tried to the court without a jury. Counsel for defendants say that the causes of action pleaded are each separate and distinct claims, one in behalf of each plaintiff against the same defendant; and that the various plaintiffs are separate and distinct, having no community of interest such as will permit them to join in the same petition. This action was brought in the nature of a creditors' bill. The liability of the directors is limited to the amount of the debts created in excess of

the subscribed capital stock. Under this character of statute in the ordinary case, the question would arise, In which creditor's favor and to what extent may the particular creditor pursue the directors for the excess debt? Many of the courts have passed upon similar statutes in this connection, and held that the liability for the excess was in the nature of a fund for the benefit of all creditors, in which they are entitled to share ratably. No one creditor shall be preferred to the exclusion or injury of others, but the action must be brought on behalf of all creditors, or if some are unwilling, they must be made parties. Each creditor will not be permitted to bring his separate action against the directors. Tradesman Pub. Co. v. Knoxville Car-Wheel Co , 95 Tenn. 634, 32 S. W. 1097; National Bank of Auburn v. Dillingham, 147 N. Y. 603, 42 N. E. 338; Hornor v. Henning, 93 U. S. 228, 23 L. Ed. 879; Stone v. Chisholm, 113 U. S. 303, 28 L. Ed. 991. We think the suit was rightly brought. The case of Gardner v. Rumsey, 81 Okla. 20, 196 Pac 941, is cited as holding to the contrary. That case is not analogous in fact with the instant case, and that case was an action at law. See, also, Woolverton v. Taylor, 132 Ill. 197, 23 N. E. 1007; Williams v. Brewster, 117 Wis. 370, 93 N. W. 479; Westinghouse Elec. & Manufacturing Co v. Reed, 194 Mass. 590, 80 N. E. 621.

The next contention presented for our consideration is that the indebtedness or rights of action herein pleaded were founded on tort and are not assignable. Prior to the dissolution of the corporation, and before maturity of the notes in question, some of the notes were assigned, and the holders of these notes are included among the plaintiffs in this action. It is these claims to which objection is being made. Certainly it would not be contended that the various claims based on promissory notes for the purchase price of the land were demands growing out of tort prior to the dissolution of the corporation. Such right of action as then existed rested in contract against the corporation. It was held in the case of Minnetonka Oil Co. v. Cleveland Vitrified Brick Co., 27 Okla. 180, 111 Pac. 326, that every chose in action not founded upon tort is assignable. The case of Rogers v. Bonnett, supra, is again cited as holding that a suit to enforce directors' liability by reason of section 5336 is not a suit upon contract but one upon tort. That case did not involve an action by creditors against the directors. In that case certain directors had paid the indebtedness which was created in excess of the subscribed capital stock, and brought suit against other directors for contribution.

In determining whether contribution could be had between and among the directors, the court said that the suit was not upon contract, but was to enforce a liability created by statute. Referring again to the statute itself, we are led to the conclusion that the right of action given a creditor is one arising out of debt or contract and is not based upon tort. The statute says that the directors must not create debts beyond their subscribed capital stock; and if they do so they are in their individual and private capacity jointly and severally liable to the creditors thereof to the full amount of the debt contracted. In the case of Credit Men's Adjustment Co. v. Vickery, 62 Colo. 214, 161 Pac. 297, it was held:

"Such statute in so far as it is remedial is to be liberally construed in its enforcement. Such statute being remedial in character and compensatory as to creditors, the liability of the directors to them can be enforced by their assignee as creditor."

The right to sue as provided by section 5336 passes with the assignment as an incident to the debt. Boynton v. Sprague, 91 N. Y. Supp. 839. This principle was upheld in Rice v. Howard (Cal.) 69 Pac. 77, and Weston v. Dahl, 162 Wis. 32, 155 N. W. 949; Flour City Nat. Bank v. Wechselberg, 45 Fed. 547. Two of the plaintiffs base their claims on the fact of their being the heirs of Florence M. Beemblossom, deceased, who was the original holder of some of the notes given for land. It is argued that such right as may have existed in favor of creditors against the directors was one based upon tort, and such a cause of action does not survive the death of the party entitled to sue. From what has just been said this proposition must be decided in the negative.

The last question presented for consideration is that the judgment of the trial court, in favor of a part of the plaintiffs, is too large. It appears that most of the creditors had reduced their claims to judgment against the corporation. In their petition they pleaded both the original note and the judgment. Both were offered in evidence at the trial. It appears that where judgments had been rendered against the corporation. most of which were in 1915 and 1916, the judgment was for principal and interest to that date in a lump sum. The trial court in this cause rendered judgment upon such judgments with contract rate of interest from the date of the judgment against the corporation. In this the court erred. Plaintiffs' various causes of action are based upon debt created by the board of directors in the name of the corporation. The statutory liability of the directors is limited to the

amount of the debt. The judgments, no doubt, may be competent evidence tending to establish the debt. The statute only authorizes recourse against the directors for the debts created. Section 2648, Fletcher, Cyclopedia of Corporations, vol. 4. Interest should therefore have been computed upon the original debt, and not upon the amount of the judgments rendered against the corporation which included interest to that date.

The trial court is therefore directed to modify its judgment so as to allow a recovery in favor of plaintiffs for the balance of the original indebtedness as evidenced by the notes in each case, with interest thereon at the contract rate to June 20, 1922, less $1,000, the amount of the subscribed capital stock, to be deducted ratably from each of said claims, and to omit from said judgment recovery of any and all attorneys' fees, and as thus modified the judgment of the trial court will be affirmed.

BENNETT, HERR, TEEHEE, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 14 C. J. p. 139, §136. (2) 14a C. J. p. 496, §2364. (3) 14a C. J. p. 218, §2028; anno. L. R. A. 1915D, 1031; 7 R. C. L. p. 510; 2 R. C. L. Supp. p. 401. (4) 14a C. J. p. 220, §2030. (6) 14 C J. p. 348, §435. (7) 14a C. J. p. 231, §2048; anno. L. R. A. 1915D, 1050; 7 R. C. L. p. 524; 2 R. C. L. Supp. p. 403. (8) 14a C J. p. 221, §2031; anno. L. R. A. 1915D, 1047; 7 R. C. L. p. 520. (9) 14a C. J. p. 234, §2051. See "Corporations," 14 C. J. §136, p. 139, n. 97; 14A C. J. §1846, p. 88, n. 12; §2028, p. 218, n. 59; §2031, p. 221, n. 11; §2051, p. 234, n. 37; §2062, p. 239, n. 35; §2407, p. 518, n. 82.