STATE ex rel OLSON, Respondent, v. TARR, et al, Appellants.

(248 N. W. 200.)

(File No. 7538.   Opinion filed April 18, 1933.)

*Edward Prchal,* State's Attorney, of Burke, *A. H. Orvis,* of Yankton, and *Charles A. Davis,* of Burke, for Appellants.

*W. J. Hooper,* of Gregory, and *Geo. A. Buffington,* of Dallas, for Respondent.

CAMPBELL, J.. In November, 1932, Gregory county, S. D., consisted of five commissioner districts. The duly elected, qualified, and acting commissioners were as follows: First district, E. B. Tarr, term expiring January, 1935; second district, T. B. Olson, term expiring January, 1933; third district, Ole N. Olson, term expiring January, 1935; fourth district, M. T. Branam, term expiring January, 1933; fifth district, B. W. Bailey, term expiring January, 1935.

At the November, 1932, general election, John F. Kaspar was elected commissioner from the second district to succeed T. B. Olson for the term January, 1933, to January, 1937, and M. T. Branam was elected commissioner from the fourth district to succeed himself for the term January, 1933, to January, 1937. At the same November, 1932, general election, the electors of Gregory

county voted by a large majority in favor of reducing the number of county commissioners from five to three, which question had been submitted to them pursuant to the provisions of section 5862, Rev. Code 1919.

The result of the November, 1932, general election having been duly ascertained, the board of county commissioners of Gregory county met within thirty days thereafter, and on December 6, 1932, undertook the redistricting of said county to the end that there should henceforth be three districts in lieu of five.

The commissioners created and established the boundaries of what we will call for purposes of distinctive reference new district number one. This embraced all of old district number two, all of old district number one, excepting one township, and one township of old district number four. Within the territory created as new district number one was the residence of Mr. Tarr, commissioner of old district number one, T. B. Olson, commissioner of old district number two, and J. F. Kasper, elected in November, 1932, to succeed T. B. Olson as commissioner of old district number two.

They created new district number two, which included about one township of old district number one, about two and one-half townships of old district number three, all of old district number four, excepting the one township embraced in new district number one, and two townships formerly in old district number five. Within the territory created as new district number two was the residence of M. T. Branam, commissioner of old district number four who had been re-elected in November, 1932, to succeed himself as commissioner from the fourth district.

They created new district number three, consisting of all of old districts number three and five, excepting the four and one-half townships thereof embraced in new district number two. In the territory included in new district number three was the residence of Ole N. Olson, commissioner of old district number three, and B. W. Bailey, commissioner of old district number five. No fault is found in this proceeding with the redistricting so far as boundaries or territory are concerned.

We have then this situation. Tarr, commissioner from old district number one, term expiring in 1935, resides in new district number one, as do likewise T. B. Olson, commissioner from

old district number two, term expiring in 1933, and Kaspar, elected to succeed T. B. Olson as commissioner for old district number two for the term 1933 to 1937. The only commissioner residing in new district number two is Branam, who was commissioner of the old fourth district for the term expiring January, 1933, and who was re-elected in November, 1932, to succeed himself for the further period of four years. Ole N. Olson, commissioner of the old third district for a term expiring in 1935, and B. W. Bailey, commissioner of the old fifth district for a term expiring in 1935, both reside in new district number three.

In connection with and as part of the redistricting thus undertaken on December 6, 1932, the old board of county commissioners purported to name and designate the commissioners who should thenceforth represent the three newly created districts. They designated as commissioner for new district number one, Tarr, commissioner of old district number one; for new district number two, Branam, commissioner of old district number four; and for new district number three, Bailey, commissioner of old district number five, omitting entirely T. B. Olson, commissioner of old district number two (and Kaspar, his successor), and Ole N. Olson, commissioner of old district number three and plantiff herein.

Under these circumstances, plaintiff Ole N. Olson secured from the circuit court of Gregory county an alternative writ of mandamus requiring the defendants to recognize relator as a duly qualified county commissioner of Gregory county, and to designate the new commissioner district which he should represent, and allow him to perform the duties of the office. Defendants moved to quash the alternative writ and, said motion being denied, elected to stand thereon rather than answer to the writ, whereupon the peremptory writ issued recognizing the division of Gregory county into three districts in lieu of five as accomplished by the county commissioners in December, 1932, holding, in substance, that the commissioners to represent the three new districts should be the commissioners from old districts number one, two, and three; to wit, Tarr, T. B. Olson (or Kaspar, his successor) and Ole N. Olson, and requiring the old board of five members to reconvene forthwith and designate which of the three new districts should thenceforth be represented by Tarr, formerly representing old

district number one, Kaspar, successor to T. B. Olson, formerly representing old district number two, and Ole N. Olson, the plaintiff, formerly representing old district number three. From the judgment of the court awarding the peremptory writ the defendants have appealed.

The controversy between the parties involves a question of statutory construction. It is the position of respondent, and was the view of the learned trial judge, that when the electors voted to reduce the number of districts from five to three the commissioners who had represented districts number four and five were automatically eliminated from office, and that it was the duty of the board to redistrict the county into three districts and allot such districts to the commissioners who had formerly represented districts one, two, and three when there were five districts. It is the contention of appellants, on the other hand, that when the electors voted to reduce the number of districts from five to three it was the duty of the old board of five commissioners to meet within thirty days, divide the county into three districts, determine what two of their members should cease to function, and assign the other three to the three new districts.

The solution of this controversy requires, of course, an examination of applicable statutes. There has been provision in our law since territorial days (sections 576, 577, Comp. Laws Dak. 1887) for increasing the number of commissioners from three to five. Not long after the division of the territory North Dakota made provision for reduction of the number of commissioners from five to three when desired by the electors of the county. No such effort was made in South Dakota, however, until 1917. By that time the North Dakota law upon the subject had crystallized into sections 3260, 3261, Comp. Laws North Dakota 1913, reading as follows:

"The number of county commissioners of any county may be increased to five or reduced to three in the manner following: Whenever the legal voters of the county, equal in number to twenty per cent of the legal votes cast at the preceding general election, petition the board of county commissioners for an increase or decrease in the number of county commissioners, said board shall submit the question to a vote of the electors of the county at a

special election to be held either at the next state primary election, or general election, as the petition may pray. Notice of the submission of such question shall be given in the notice of election prescribed by section 982. If the petition is for an increase in the number of commissioners, the proposition shall be submitted in this form:

" 'For five commissioners.'

" 'Against five commissioners.'

"If it is for reduction, the proposition shall be in this form:

" 'For three commissioners.'

" 'Against three commissioners.' "

"When the returns of such election show a majority of all the legal votes cast to be for an increase from three to five, it shall be the duty of the board of county commissioners, within ten days after the votes have been canvassed, to divide the county into five districts. The districts shall be numbered from one to five, those last created being designated fourth and fifth, respectively. At the ensuing general election commissioners for such additional districts shall be elected, the commissioner for the fourth district for a term of two years, and the commissioner for the fifth district for a term of four years. The tenure of office of the existing board of county commissioners shall not be affected. The district which each commissioner shall represent shall be designated by such board. When the special election results in a majority for a decrease of from five to three the existing county board shall, at the end of the first two expiring terms of the same year, declare such districts vacant, and at their first regular meeting thereafter proceed to divide the county into three commissioner districts, and in such division designate the district which each of the three remaining commissioners shall represent."

The South Dakota Legislature enacted chapter 176, Laws 1917, consisting of two sections amending sections 811 and 812, Political Code 1903, and reading as follows:

"The number of county commissioners of any county may be increased to five or reduced to three in the manner following:

"Whenever the legal voters of the county, equal in number to twenty per cent of the legal votes cast at the preceeding general election, petition the board of county commissioners for an increase

or decrease in the number of county commissioners, said board shall submit the question to a vote of the electors of the county at an election to be held either at the next state primary election, or general election, as the petition may pray. Notice of the submission of such question shall be given in the notice of election prescribed by law."

"When the returns of such election show a majority of all the legal votes cast to be for an increase from three to five, it shall be the duty of the board of county commissioners, within ten days after the votes have been canvassed, to divide the county into five districts. The districts shall be numbered from one to five, those last created being designated fourth and fifth, respectively. At the ensuing general election commissioners for such additional districts shall be elected, the commissioner for the fourth district for a term of two years, and the commissioner for the fifth district for a term of four years. The tenure of office of the existing board of county commissioners shall not be affected. The district which each commissioner shall represent shall be designated by such board. When the election results in a majority for a decrease of from five to three it shall be the duty of the board of county commissioners within thirty (30) days after the votes have been canvassed to divide the county into three districts, and in such division designate the district which each of the three of the remaining commissioners shall represent."

■ A comparison of the statutes shows that section 1, ch. 176, Laws 1917 (which has since become, without change, section 5862, Rev. Code 1919), is practically identical with the then North Dakota law upon the subject (section 3260, Comp. Laws 1913), excepting for the omission of the last clause concerning the form of the ballot for submitting the proposition to the electors. It is also apparent that section 2, ch. 176, Laws 1917 (which has since, without change, become section 5863, Rev. Code 1919), down to and including the words "When the election results in a majority for a decrease of from five to three," is a copy of the North Dakota statute dealing with the subject. Section 3261, Comp. Laws 1913. Chapter 176, Laws 1917, was introduced in the Legislature as House Bill 95. Conceding that we may not judicially notice the contents of the printed bill as originally introduced in the Legislature, nevertheless, for purposes of construction of the statute, we

may examine the official journals of the session. Nash v. Giffen (1933), 61 S. D. 114, 246 N. W. 299. From the official journals of the 1917 session we find that House bill 95 was referred to the committee on counties and county affairs, and returned by said committee "with the recommendation that said Bill be amended as follows:

"In line 17 of Section 2, page 2 of the printed bill commencing with the words 'the existing County Board' strike out said words and the rest of the section and insert in lieu there of the following: 'It shall be the duty of the Board of County Commissioners within thirty (30) days after the votes have been canvassed to divide the county into three districts, and in such division designate the district which each of the three of the remaining commissioners shall represent.'

"And that as so amended said Bill do pass." House Journal 1917, 614.

—which proposed amendment was adopted by the House (House Journal 1917, 636) and the measure thereafter passed both House and Senate without any other change. From this journal record it may be very strongly conjectured that sections 1 and 2 of chapter 176, Laws 1917, as originally introduced, were practically verbatim copies of sections 3260 and 3261, Comp. Laws North Dakota 1913 (save only the omission of the form for submitting the proposition to the electors specified in section 3260 of the North Dakota law), and that by amendment in the House the last portion of section 3261 of the North Dakota law, reading as follows: "The existing county board shall at the end of the first two expiring terms of the same year, declare such districts vacant, and at their first regular meeting thereafter proceed to divide the county into three commissioner districts, and in such division designate the district which each of the three remaining commissioners shall represent" —was amended to read, "It shall be the duty of the board of county commissioners within thirty (30) days after the votes have been canvassed to divide the county into three districts, and in such division designate the district which each of the three of the remaining commissioners shall represent."

It was quite plainly the intent of both the North Dakota and South Dakota laws that, when the electors have voted to reduce the commissioners from five to three, two commissioners shall cease

to function in such office, the county shall be divided into three districts in place of five, and the three new districts assigned to "the three remaining commissioners." The North Dakota law specifies clearly what two commissioners shall be eliminated, and when, to wit, the first two expiring terms of the same year, and the elimination is to be made and the redistricting had at the end of those terms. Having thus provided for the elimination of two commissioners, the law provides for the designation of the three new districts to the three remaining commissioners. The South Dakota Legislature, however, by the adoption of the committee amendment above referred to, while undertaking to retain the provision for the creation of three districts and the assignment thereof to "the three remaining commissioners," entirely omitted the provision for determining what two commissioners should be eliminated. Starting with five commissioners, providing specifically for the elimination of two, as does the North Dakota law, the phrase "the three remaining commissioner" has some meaning. But to start with five commissioners, omit entirely any specification of what two are to be eliminated, and then speak of "the three remaining," is certainly vague and unsatisfactory.

There is nothing whatever in the law to support the theory of appellants in this case that the five-man board of county commissioners was authorized to determine what two of their number should cease to function, and to assign the three new districts to whatever three of their number they saw fit. We fear there is no more to support the contention of respondent or the opinion of the learned trial judge that the election automatically eliminates the commissioners of old districts number four and five. Conceding the power of the Legislature so to have declared, they do not seem to have made such declaration in this statute. The boundaries of the county are in no manner changed. The total territory of the county is to be divided into three districts in place of five, but there is no necessary identity of new district number one with old district number one, either as to territory or inhabitants. There were five commissioners in Gregory county, and no one of them had any greater right to hold office to the expiration of the term to which he was elected than any other of them. Conceding the power of the Legislature to provide that when the electors so

desired the number of commissioners might be reduced from five to three, nevertheless it was the duty of the Legislature to determine what two out of the five commissioners should thereupon cease to function, or to provide adequate machinery for determining that question. This the Legislature has failed to do. Admitting that any two of the five commissioners of Gregory county might be deprived of office by adequate legislative act at any time, and that the Legislature might be as arbitrary as they saw fit in determining what two commissioners should be thus deprived, nevertheless none of said commissioners should be deprived of office by judicial legislation under the guise of construction of an incomplete, indefinite, and unworkable statute. It is not a case where, as a result of the election it was contemplated that districts four and five should be eliminated, and districts one, two, and three continued unchanged. The territory and inhabitants of districts four and five are just as much in Gregory county now as they were prior to this election. As a matter of fact, the statute contemplates that all five of the old districts should be eliminated, and three new districts should be created, which, while they are to be numbered one, two, and three, will bear no identity whatever with old districts one, two, and three. Except by express legislative fiat, the commissioners from old districts one, two, and three have no better right than the commissioners from old districts four and five to claim to be the representatives of new districts one, two, and three. If the Legislature in enacting chapter 176, Laws 1917, had any intention as to what two of the existing five commissioners should be eliminated as the result of an election reducing the number from five to three, they have entirely failed to use any words in the statute to express such intention either directly or by any necessary or reasonable implication. Possibly the Legislature meant that the commissioners from old districts number four and five should be ipso facto eliminated immediately upon ascertaining the result of the election, as respondent contends, but for this court so to declare from any words used by the Legislature would be sheer speculation and conjecture. Doubtless the Legislature meant to eliminate two commissioners, but they have entirely failed to say what two or to provide any method for determining what three of the previous five commissioners they intended should be deemed "the three remaining commissioners."

■ We are of the opinion that that portion of section 2, ch. 176, Laws 1917 (section 5863, Rev. Code 1919), which attempts to provide for a decrease of the number of commissioners from five to three, for a division of the county into three new districts, and for the assignment of such districts to "the three remaining commissioners," is so vague and uncertain that it is impossible to determine therefrom the legislative intent, and so incomplete as to be impossible of execution, and that it must be held void for uncertainty. Cf. State ex rel. v. Bd. of Canvassers of Milwaukee County, 159 Wis. 249, 150 N. W. 554; State ex rel v. Bd. of State Canvassers, 159 Wis. 216, 150 N. W. 542, Ann. Cas. 1916D, 159. We do not think this portion of chapter 176, Laws 1917, is properly severable from that portion of section 1 of that law (section 5862, Rev. Code 1919) providing for submitting to the electors the question of reduction of the number of county commissioners from five to three. Cf. Note Ann. Cas. 1916D, page 9. Manifestly, the Legislature of 1917 would not have provided for the submission of the question of reduction to the electors of a county unless they supposed that they had provided a valid and workable machinery for carrying the result of the election into effect. We are therefore of the opinion that the entire part of chapter 176, Laws 1917 (sections 5862, 5863, Rev. Code 1919), purporting to provide for submission to the electors of a county the question of reducing the number of county commissioners from five to three and purporting to provide what shall be done in the event that question should carry at the election, is void.

Applying this view of the law to the instant case, it follows that the attempt at the November, 1932, election to reduce the number of commissioners of Gregory county from five to three is without force or effect, and it follows that the lawful county commissioners of Gregory county at the present time are five in number and consist of those who were such in November, 1932, whose terms of office have not yet expired (Tarr, Ole N. Olson, and Bailey), and those who were elected at the November, 1932, election (Kaspar and Branam) ; that the attempt of the county commissioners in December, 1932, to divide Gregory county into three districts is void and of no effect, and that said county still consists of the same five commissioner districts as previously.

While we think respondent Olson is still a commissioner of Gregory county, yet he is entitled to recognition as one member of a board of five and as a member from old district number three, and he is not entitled to the relief sought by his application for mandamus or awarded by the court below. The judgment appealed from will therefore be reversed, and the cause remanded, with directions to enter an order quashing the application for mandamus. No costs will be taxed in this court.

All the Judges concur.