STATE ex rel. COOPERATIVE WOOL GROWERS OF S.D.,
et al, Plaintiffs, v. BUSHFIELD, Governor, et al, Defendants
(Original Proceeding)

(8 N. W.2d 1.)

(File No. 8604.   Opinion filed February 24, 1943.)

**George Schlosser**, of Brookings, and **Royhl & Longstaff**, of Huron, for Plaintiff.

**George T. Mickelson**, Atty. Gen., and **E. D. Barron**, Ass't. Atty. Gen., for Defendants.

RUDOLPH, J. This is an original proceeding in this court wherein the plaintiffs seek to compel the Governor of South Dakota to appoint to the State Livestock Sanitary Board some person recommended to the Governor for such appointment by the Cooperative Wool Growers of South Dakota. It is further sought in said proceeding to prohibit one Max Shuft from qualifying as a member of the State Livestock Sanitary Board under an appointment he has received from the Governor without the recommendation of the Cooperative Wool Growers of South Dakota. The proceeding is predicated upon SDC 40.0101, which provides with reference to the membership of the State Livestock Sanitary Board as follows: "The Board consists of five members appointed by the Governor with terms of office so arranged that one and only one expires each year and as each expires, the succeeding term shall be for a period of five years and until the successor is appointed and qualified. Vacancies may be filled by appointment of the Governor for the balance of the unexpired term. All members must be electors of the state; one shall be a person recommended for appointment by the Western South Dakota Stock Growers' Association; another shall be a person recommended for appointment by the South Dakota Wool Growers' Association; at least two of the members shall be residents east of the Missouri river; one member shall be a veterinarian actively engaged in practice in the state and a graduate of a recognized and approved college of veterinary medicine; four members of the Board except the veterinarian shall be persons actually and actively engaged in the raising of livestock within the state. The members shall qualify by taking and subscribing the oath of office required of other civil officers of the state."

The defendants have filed a motion to dismiss the proceedings and the matter is before the court by virtue of this motion. The alleged facts disclose that when SDC 40.0101 came into our law as Ch. 158, Laws of 1937, the then Governor of the state, purporting to act under the said law appointed one J. E. Erickson for the five-year term commencing on July 1, 1937, and expiring July 1, 1942, upon the recommendation of the Cooperative Wool Growers of South Dakota. No other member of the State Livestock Sanitary Board has been recommended for appointment by the Cooperative Wool Growers of South Dakota. Upon the expiration of Mr. Erickson's term of office, July 1, 1942, the Governor had no recommendation from the Cooperative Wool Growers of South Dakota and within a few days following July 1, after consulting "prominent men living in the western part of the state" who assured him that Mr. Shuft "was probably the best man living in the state for this particular job as a representative of the wool producers" the Governor appointed Mr. Shuft to succeed Mr. Erickson as a member of the Board. On July 16, 1942, after hearing of the appointment of Mr. Shuft, one James H. Lemmon, a director of the Cooperative Wool Growers of South Dakota, wrote the Governor objecting to the appointment of Mr. Shuft and insisted that no appointment to succeed Mr. Erickson could be made except upon the recommendation of the Cooperative Wool Growers of South Dakota. On August 17, 1942, the Governor was advised that the Board of Directors of the Cooperative Wool Growers of South Dakota "is ready to make such a recommendation upon short notice if the opportunity is afforded." The Governor replied that "in view of the fact that the appointment has been made I cannot in good faith either remove the appointee or ask him for his resignation." Whereupon these present proceedings were instituted.

We are first met with the fact that no where in the act under which the appointment was made is mention made of the plaintiff, Cooperative Wool Growers of South Dakota. However, plaintiffs contend that the legislature intended to

refer to the plaintiff association when it provided that the appointment should be upon the recommendation of the "South Dakota Wool Growers' Association." Obviously to sustain plaintiffs' contention this court must either by construction or interpretation change the legislative designation of the recommending association from that found in the act to the plaintiff association. We are asked to make this change upon certain alleged facts, all of which present the question to what extent may a court consider extrinsic matters in determining the meaning of a statute.

The plaintiffs first allege that the plaintiff association was one of the parties instrumental in proposing the 1937 act to the legislature, and that it was the intention of those who drafted the act that the plaintiff association should be the recommending association. We think it clear that these facts are of no aid to the court in construing the statute as contended for by the plaintiffs. In the first place, it is the intention of the legislature that is sought and not the intention of those who drafted the act. Secondly, it is universally held, so far as we can determine, that evidence of a member of the legislature or the draftsman of a statute, is not a competent aid to a court in construing a statute. 59 C. J. 604.

Plaintiffs next allege that at the time of the passage of the 1937 act there was no association in the state bearing the name of South Dakota Wool Growers Association, that the plaintiff association was the only state wide association of wool growers existing in South Dakota, and that it was only because of an error of the draftsman that the wrong name appeared in the act. May such evidence be considered by the court in construing the act? We think not. This court has recently held that an alleged error in a statute will be corrected and a substitution made, provided the substitution can be made from a reference to the law itself, other statutes or official records of the legislative proceedings. Elfring v. Patterson, 66 S. D. 458, 285 N. W. 443. The 1937 legislative proceedings contain no reference to indicate that any error was made in the use of the name

of the recommending association. There is nothing in the statute itself or official records which indicates the alleged error, and certainly nothing which would justify this court in finding that the legislature intended some association other than the one it designated to be the recommending agency.

It is further contended by the plaintiffs that the clear intention of the legislature as gleaned from the act itself is to give the wool growers of the state representation on the State Livestock Sanitary Board, and unless the court will consider the alleged facts and substitute the plaintiff association for the association named in the act, this legislative intention will not be effective. Conceding that it is the legislative intention to give representation to the wool growers, such intention does not require a construction of this statute which vests in the plaintiff association the right to make the recommendation.

We are inclined to believe that this case falls within the rule announced in Elfring v. Patterson, supra, but, in any event, the alleged facts are not such, in our opinion, as should be considered by the court in construing this statute. The rule is stated in Sutherland on Statutory Construction, Sec. 298 as follows: "The court will not hear proof of extrinsic facts known to the legislature or members thereof which are supposed to indicate their intention in passing a law. But circumstances known to all the public * * * are proper to be considered in looking for the intention of the legislature when not explicitly expressed." This court has held that in determining whether an act is for the support of the state government and not subject to the referendum its "inquiry would not extend beyond the scope of judicial knowledge." State ex rel. Botkin v. Morrison, 61 S. D. 344, 249 N. W. 563, 565. The present case supports the basis for the rule. If the alleged facts are of such general and common knowledge that the court could say that the legislature knew that there was no association in the state bearing the name South Dakota Wool Growers Association and also that the only state wide association of wool growers

in the state was the plaintiff association, then the court might with reason, in view of the fact that it was the intention of the act to give representation upon the Board to the wool growers, conclude the legislature intended to name the plaintiff association. But unless these facts are of such common knowledge that we can say they were known to the legislature, we have no basis whatsoever upon which to determine that the legislature meant to designate an association of wool growers other than the association it specifically named in the statute. We are of the opinion that the alleged facts are not of such a character that this court can say they are of common and general knowledge. It is undoubtedly within the general knowledge that the raising of sheep and growing of wool is one of the major industries in the state, but to go further, and to say that the names and and the number of associations organized in connection with the indutsry are generally known, we do not believe would be justified.

Plaintiffs cite the case of Washington Fire Co. v. Yates, 13 Del. Ch. 32, 115 A. 365, 367, but the court there specifically stated, "* * * it seems to be very clear that the acts themselves when taken together disclose" the intention of the legislature. The court in that case did state that "evidence aliunde the document" might be considered in determining the person meant to be designated in the statute but it was not necessary for the court to define "the extent to which resort may be had to evidence outside the act itself for the purpose of disclosing the intent in the use of the name." In the case of United States v. Webster, 28 Fed. Cas. page 509, No. 16,658, cited by plaintiffs, the court went only to the extent of looking to a public document of the war department, which had been submitted to the house of representatives and by their order printed, before the passage of the law under consideration.

We find no merit in plaintiffs' contention that the statute has received an executive construction to which this court should adhere. Conceding that the alleged facts are sufficient to support the view that one appointment under

the statute was made upon the recommendation of the plaintiff association, it is nevertheless, clear that the only other appointment was made without consulting the plaintiff association. There is no uniformity so far as executive construction is concerned.

An order will be entered sustaining the motion to dismiss the proceedings.

All the Judges concur.