STATE ex rel. DUNKER, Appellant v. SPINK HUTTERIAN BRETHREN, Respondent

(90 N.W.2d 365)

(File No. 9627. Opinion filed May 24, 1958)
Rehearing denied June 24, 1958.

Phil Saunders, Atty. Gen., E. D. Barron, Asst. Atty. Gen., W. G. Dunker, State's Atty., Spink County, Redfield, for Plaintiff-Appellant.

Charles Lacey, Sioux Falls, Max Royhl, Huron, for Defendant-Respondent.

KNIGHT, Circuit Judge. The state has appealed from a judgment of dismissal entered by the Circuit Court of Spink County decreeing that Chapter 15 of the Session Laws of 1955, which will be hereinafter referred to as "the act", is unconstitutional and void for uncertainty. The chapter is as follows:

"Repealing Communal Corporation Laws

"An Act Entitled, An Act to repesal chapter 11.12 of the South Dakota Code of 1939, as amended by chapter 18 of the Session Laws of 1953, relating to communals, and saving certain provisions for such presently existing groups.

"Be It Enacted by the Legislature of the State of South Dakota:

"Section 1. That chapter 11.12 of the South Dakota Code of 1939, as amended by chapter 18 of the Session Laws of 1953, be, and the same is hereby, repealed.

"Section 2. This act shall in no manner affect any society, association or company heretofore formed or incorporated pursuant to any statute hereby repealed, **except that it shall be a bar to the expansion of any activity or power of such society, association or company authorized prior to and in effect at the effective date of this act.**"

The ultimate facts are not in dispute. On April 9, 1945, articles of incorporation were filed and a charter granted to defendant as a communal corporation pursuant to SDC

Chapter 11.12. Prior to the effective date of the act, defendant acquired 5,680 acres of land in Spink County, upon which its 133 members resided as a communal colony, depending exclusively upon farming and stock raising for the sustenance of its members.

Subsequent to the effective date of the act, defendant purchased an additional 80 acres of land. The State's Attorney of Spink County, deeming this purchase to be an expansion of an activity of defendant and in violation of the provisions of the italicized portion of Section 2, of the act, brought this action pursuant to SDC 37.05, in the name of the state for the purpose of vacating the charter of the defendant and annulling its existence as a corporation.

Defendant, by answer, challenged the constitutionality of the act on several grounds, and as respondent, now

"alleges that Chapter 15, Laws of 1955, is invalid in that it is indefinite and uncertain and not a proper exercise of the police power and thus denies the defendant due process of law, that it impairs the obligation of contract, denies the defendant equal protection of the law and discriminates against it, has a defective title, and denies it the right of freedom of religion and the free exercise thereof."

The judgment of the trial, omitting formal parts and recitals, is as follows:

"It is Hereby Ordered, Adjudged and Decreed That Chapter 15 of the Session Laws of 1955 and particularly Section 2 thereof is too vague, indefinite and uncertain to be enforceable and it furnishes no guide for the enforcement of its provisions and is void for want of due process of law, and is in terms so vague that men of common intelligence must guess as to its meaning and differ as to its application.

"It is Further Ordered, Adjudged and Decreed That the plaintiff's action and proceeding be and the same is hereby dismissed upon the merits and with prejudice."

The trial court, in a carefully prepared memorandum decision, after discussing but not passing upon the extent of the reserved legislative power hereinafter discussed, held the act invulnerable, except upon the ground of uncertainty, upon which the judgment is based.

■ ■ To declare statutes unconstitutional is a delicate power of the courts to be exercised with great caution. The fact that in declaring a statute unconstitutional the court annuls the the act of a co-ordinate department of government justifies the attitude of the courts in declining, whenever possible, to pass upon constitutional questions. State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283; In re Clark's Estate, 105 Mont. 401, 74 P.2d 401, 114 A.L.R. 496; United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877; In re Snyder's Estate, 74 S.D. 14, 48 N.W.2d 238.

■ The judgment appealed from strikes down the act in its entirety and we find that a proper disposition necessitates a determination of the issue of constitutionality which is presented by appropriate assignments of error. Every presumption is in favor of the validity and propriety of the enactment, which should not be held unconstitutional unless its infringement of constitutional restrictions is so plain and culpable as to admit of no reasonable doubt. State ex rel. Botkin v. Welsh, 61 S.D. 593, 251 N.W. 189; Mundell v. Graph, 62 S.D. 631, 256 N.W. 121; Warren v. Brown, 57 S.D. 528, 234 N.W. 38; State v. Black Hills Transportation Co., 71 S.D. 28, 20 N.W.2d 683; Hodges v. Snyder, 45 S.D. 149, 186 N.W. 867, 25 A.L.R. 1128.

A clear understanding necessitates a brief statement of events preceding the adoption of the act, as these events are disclosed by the record in this case, the opinion of this court filed in 1922, in State ex rel. Chamberlain v. Hutterische Bruder Gemeinde, 46 S.D. 189, 191 N.W. 635, and earlier legislative enactments.

Members of the Hutterische society came from south Russia to Bon Homme County in 1874, lived a communal life apparently in accordance with their religious beliefs, and engaged in farming and stock raising. In 1905, 222 members

of this society filed articles of incorporation and were granted a charter as a religious corporation, and thereafter continued the activities and mode of life practiced prior to such incorporation. During or shortly after World War I, upon the request of the State Council of Defense, the action above mentioned was brought in the Circuit Court of Beadle County to annul said charter. The trial court rendered a judgment adverse to the defendant corporation but denied the annulment sought, which judgment was modified by this court to order such annulment, with permission to such corporation to convey all its property. The opinion contains a rather comprehensive statement of the beliefs, activities, living habits. and customs of the members of the corporation, and a discussion of the prerogatives of religious corporations and legislative powers relating thereto. At the time of the trial in that case there were 856 members of the corporation, which then owned real and personal property of the estimated value of $1,112,000. The court held that the defendant was not a religious corporation but one engaged almost entirely in secular pursuits. We quote from the opinion:

"The members of said church, as fundamental doctrines of their faith, profess to believe that they are commanded to live and act together in communistic life with one mind, heart, and soul, and that the Scriptures command them to have, hold, use, possess, and enjoy all things in common; that they must never, intentionally, under any circumstances, kill a fellow human being, nor take an oath, nor hold political office, nor bring suit; that each member must devote all his time and service to the communistic society, without compensation or reward, other than support, maintenance, education, and religious instruction of himself and members of his family; that all must cultivate the soil to supply the common needs of all, and as an acceptable service of God. That no person can become a member of the corporation who is not a member of the church, and no person can become a member of the church without publicly confessing his belief in, and agreeing to, its articles of faith, receiving the

rite of baptism, and subjecting himself to its rules and discipline. That the members of said church profess to recognize and follow the teachings of the Bible, as interpreted by their own intelligence and in the light of certain religious books handed down by their forefathers. That they firmly adhere to the aforesaid religious doctrines to the extent of withholding all voluntary aid to the government under which they live in prosecuting any war, on the alleged ground that their duty to God is higher, in a moral sense, than their obligation to any human government. That a violation by a member of this doctrine of non-resistance is cause for his expulsion from the church. That, as a condition of membership, each member, at the time of signing the rolls of the church, agrees to the surrender and renunciation of the right to own and hold property as an individual."

Communal corporations were first provided in this state by Chapter 72 of the Session Laws of 1935, which, without substantial change, was re-enacted as SDC Chapter 11.12.

Prior to the amendment thereof hereinafter referred to, whereby the herein italicized portions were eliminated, the said chapter was, in part, as follows:

"11.1203. Powers of communals; general; articles or by-laws may define communal mode of living and require conformance. Any association created under the provisions of this chapter shall have power to conduct any agricultural, dairy, mercantile, mining, manufacturing, or mechanical business as provided in the articles of incorporation, and may own, hold, and control all kinds of property both real and personal for the mutual benefit of the members of the association and their dependent families, and the children of their dependent families, and may sell and convey or incumber the same in the same manner prescribed by law for the conveyance of real and personal property by corporations in this state.

"The association shall also have power in its by-laws to define a mode and manner of communal life for its members and their dependent families to live and practice **and to require the members and their dependent families to practice and live the communal life as defined and provided by the articles of incorporation or by the by-laws,** and no person shall be entitled to become a member of said association or to any of the rights of a member thereunder until he has complied with the articles of incorporation and the by-laws of the corporation."

11.1204. (in part). "The persons forming such association or corporation shall sign and acknowledge written articles of incorporation which shall contain:

"(1) All of the things required to be stated by section 11.0202;

"(2) The post office address of the corporation;

"(3) The names and residences of the persons forming the same;

"(4) The place where its records will be located; and

"(5) A statement of the business in which the corporation is engaged.

"The articles of incorporation may specify the qualification of members, the mode of election, and the terms of admission to membership.

"The articles of incorporation shall provide for the issuance of membership certificates in lieu of stock which certificates shall not be assignable or transferable except as provided by the by-laws of the association and shall only entitle the member receiving the same to such rights in said association as shall be defined by written articles of incorporation or the by-laws of the corporation, duly adopted.

"**The articles of incorporation may also provide for suitable penalties for misconduct, misfeasance, or malfeasance of members, or for the failure of**

**members to abide by the articles of incorporation and by-laws or the by-laws of the corporation."**

Subsection (3) of Section 11.1206, prior to amendment, authorized the adoption of by-laws, of the nature provided for in the italicized portion of Section 11.1204, as above set forth. Chapter 18, of the Session Laws of 1953, amends the sections above quoted by deleting therefrom, and thus repealing, the italicized portions thereof, and repealing said subsection (3) of Section 11.1206.

■ The power of the corporation **to require** its members to live and practice the communal life set forth in its articles of incorporation and to provide for penalties for misconduct, etc., of its members, was withdrawn and any by-laws to this effect were rendered invalid by Chapter 18 of the Session Laws of 1953, which, by the omission of the italicized portions of said sections SDC 11.1203 and 11.1204 repealed such portions. National Bank of Wheaton v. Elkins, 37 S.D. 479, 159 N.W. 60; 82 C.J.S. Statutes § 384, p. 901.

The articles of incorporation so filed as aforesaid and which apparently have not been amended since the granting of the charter are voluminous, consisting of twenty-one numbered paragraphs, and set forth as the purposes of the incorporation many matters not contemplated nor authorized by Chapter 11.12.

These purposes are set forth in paragraph 2 of the articles of incorporation with subsections (a) to (i) inclusive, from which we quote the following subsections:

"(a) The purpose for which this Association is formed is to promote, engage in, and carry on the Christian religion, and Christian worship, and religious education and teachings by means of communal life, and to worship God according to our religious beliefs, as practiced by all Hutterische Churches throughout the world;

"(b) To engage in, and carry on farming, dairying, milling activities and pursuits in all of their branches and to manufacture and deal in the pro-

ducts and by-products of said industries, all as a means of carrying on, promoting and disseminating our religious doctrines and beliefs;

"(c) To carry on all of such activities and pursuits for the mutual benefit of the members of said corporation and their dependent families and the dependents of their dependent families, and to practice a communal mode of living;

"(d) To own, hold, and control all kinds of property both real and personal, for the mutual benefit of the members of the corporation and their dependent families and the children and dependents of their dependent families, and to sell and convey or incumber the same, in the manner prescribed by law for the conveyance of real and personal property by corporations in South Dakota."

Subparagraphs (e) to (i) relate to mercantile, mining, manufacturing, applying for and securing patents, etc., activities in which defendant has never been engaged.

The by-laws of the defendant are not before us, but the following quoted paragraphs from the articles of incorporation, together with the portions of Section 2 thereof hereinbefore set forth, indicate the general nature of the corporation and the purported rights and obligations of its members:

"9. The members of the Corporation shall share all property and rights in property, equally and shall work and thrive for the common good, advancement and benefit of all the members, and shall give all their time, labor, services, earnings and energies to the said corporation and the purposes for which it exists, freely, voluntarily and without compensation or reward of any kind whatsoever other than as herein provided, or in the by-laws, rules and regulations of the said corporation expressed.

"10. All property, both real and personal, that each and every member of the corporation has or may have, own, possess or may be entitled to at the time that such member becomes a member of the

said corporation, and all the property, both real and personal, that each and every member of the said corporation may have, obtain, inherit possess or be entitled to after such person becomes a member of the said corporation shall be and become the property of the said corporation to be owned, used, occupied and possessed by the said corporation for the common use, interest and benefit of each and all members thereof.

"11. If any member of the said corporation shall be expelled therefrom or retire or otherwise cease to be a member thereof, the said member shall not have, take or withdraw from, grant, sell, transfer or convey or be entitled to any of the property of the said corporation or any interest therein; and in the event of a member of the said corporation dying or being expelled from membership in the said corporation or retiring or ceasing to be a member thereof, the personal representative, heirs-at-law, legatees or devisees, or grantees of such member, or any other person, firm, or corporation claiming any interest whatsoever from or through such member, shall not be entitled to any of the property of the said corporation or any interest therein, whether or not such member owned, possessed or had any interest therein, or to any of the property of the said corporation at the time when such member became a member thereof or at any time before or after such person became a member thereof and whether or not such member had given, granted, conveyed, or transferred any property or interest in property at any time to the said corporation.

"12. If any member of the said corporation refuses to obey and conform to the by-laws, rules and regulations of the said corporation, or refuses to give and devote all his time, labor, services, earnings and energies to the said corporation, or refuses or neglects to do and perform the work, labor, acts and things required of him by the by-laws, rules and

regulations of the said corporation, or refuses or neglects to attend and engage in the regular meetings, worship and religious services of the said corporation, or abandons or quits membership in the said corporation, such member may be expelled or dismissed from membership in the said corporation upon a majority vote of the male members of the said corporation.

"13. No individual member of the corporation shall have any assignable or transferable interest in the corporation or in any of its property, real or personal."

Paragraph 7 of the articles of incorporation provides generally that the corporation shall have power to fix and specify in its by-laws the qualifications of members and that "All shall be members who are born in or adhere to the faith of the Hutterian Brethren as known throughout the world."

It thus appears that it is within the purported power of the corporation to take and own any and all property which any member may obtain in any manner, and by a vote of the majority to expel any member for noncompliance with the rules as to adherence to its teachings and attendance upon religious services, and that upon such expulsion, such person shall forfeit and be deprived of any and all property and all interest in the corporation and its property. That voluntary enlistment by a member in the military service of the United States, or acquiescence in the draft therefor, might result in such expulsion and forfeiture.

The charter granted defendant consists of its articles of incorporation and the laws of this state. In re Hanson's Estate, 38 S.D. 1, 159 N.W. 399, 400. The charter was applied for and granted under the provisions of SDC Chapter 11.12. In all respects in which there is a conflict between the powers conferred by the statute and those set forth in the articles of incorporation or the by-laws of the corporation adopted pursuant to such articles of incorporation, the law is supreme. 13 Am.Jur., Corporations, p. 187 et seq.; 18 C.J.S. Corporations § 25, p. 406 et seq.

"The laws under which a corporation is created are as much a part of its charter as if actually written into and made a part of the charter." In re Hanson's Estate, supra.

■ The charter of defendant was not vitiated by the inclusion in its articles of incorporation of powers not authorized by the law, and those matters included therein not so authorized are considered as surplusage and without any force or effect. 18 C.J.S. Corporations § 55, p. 436; 13 Am.Jur., Corporations, p. 187; Colcord v. Granzow, 137 Okl. 194, 278 P. 654, 64 A.L.R. 699.

The charter of defendant was granted to and accepted by it subject to the reserved constitutional and statutory power of the legislature to alter, revise, or annul the same at any time.

S.D. Constitution, Article XVII, Section 9: "The legislature shall have the power to alter, revise or annul any charter of any corporation now existing and revocable at the taking effect of this constitution, or any that may be created, whenever in their opinion, it may be injurious to the citizens of this state, in such a manner, however, that no injustice shall be done to the incorporators. No law hereafter enacted shall create, renew or extend the charter of more than one corporation."

SDC 11.0105:" Reservation of power; Legislature may alter, suspend, or repeal. Every grant of corporate power is subject to alteration, suspension, or repeal in the discretion of the Legislature, and any statute of this state relating to corporations may be repealed or amended by the Legislature at any time."

S.D. Constitution, Article XVII, Section 7: "No corporation shall engage in any business other than that expressly authorized in its charter, nor shall it take or hold any real estate except such as may be necessary and proper for its legitimate business."

The record discloses that seventeen communal corporations, similar to, if not identical with, the defendant have

incorporated and now exist under the provisions of said SDC Chapter 11.12, and are engaged exclusively in agricultural pursuits. There is nothing in the record to indicate the number of other communal corporations, if any, which have been granted charters pursuant to this law.

■ This chapter provides for communal, not religious, corporations and is equally applicable to atheistic communistic corporations and to Christian communals. Corporations chartered under this chapter, regardless of the purposes and powers stated in their articles of incorporation, and regardless of the beliefs of its members, as stated therein, are secular corporations. State ex rel. Chamberlain v. Hutterische Bruder Gemeinde, supra.

Benevolent, religious and educational corporations are provided for in SDC Chapter 11.13 to 11.18, both inclusive.

■ We may assume that the matters hereinbefore set forth, and other facts not known to the members of this Court, were fully considered by the Legislature in passing the act. It is not the function of the Court to inquire into the wisdom, policy, necessity, or expediency of legislation. As was stated in Elfring v. Paterson, 66 S.D. 458, 462, 285 N.W. 443, 445, "It is for the Legislature to choose its subjects, and its own mode of expression. It is for the court to interpret the language employed so as to carry into effect the legislative purpose, so far as it may not be unquestionably at variance with the Constitution."

"The Legislature, within well-known and well-defined limitations, is the sole judge as to when and how the police power is to be exercised." State v. Central Lumber Co., 24 S.D. 136, 137, 123 N.W. 504, 42 L.R.A., N.S., 804; 13 Am.Jur., Corporations, p. 236.

It was the prerogative of the legislature to consider and decide whether "in their opinion it (any corporation) may be injurious to the citizens of the state," and upon such decision to "alter, revise, or annul" its charter. The decision reached is indicated by the legislative action taken. It is not the prerogative of the Court to inquire into or ascertain what facts and considerations resulted in such decision. In

City of Madison v. Chicago, M. & St. P. & P. Ry. Co., 2 Wis.2d 467, 87 N.W.2d 251, 255, the rule is stated thus:

> " ' "If there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the Legislature had such fact in must find that the facts before the legislature were cannot try the Legislature and reverse its decision as to the facts. All facts necessary to sustain the act must be taken as conclusively found by the Legislature, if any such facts may be reasonably conceived in the mind of the court." See 11 Am.Jur., Constitutional Law, [p. 776] sec. 128.

> " 'Unless the court can say that the law appears on its face to be unreasonable and unnecessary it must find that the facts before the legislature were sufficient to justify the requirement. If circumstances could exist to justify the requirements, it must be presumed that such circumstances did exist.' "

Perhaps the freedom of the individual members of such corporations who are "citizens of the state" may have been considered, although the wishes of such individual members might be difficult to ascertain. To quote Channing, "The obstacles to inquiry are as real, and may be as powerful, as in the neighborhood of the Inquisition. The multitude dare not think, and the thinking dare not speak." Under the purported powers as set forth in the articles of incorporation, any member may be expelled by a majority vote without being permitted to take with him so much as a small coin bearing the motto of his country, "In God We Trust."

Any member bringing suit to secure a right or redress a wrong or to secure a declaratory judgment as to the validity and effect of the articles of incorporation, or his right to receive a legacy, would do so at the risk of such expulsion.

The intention of the legislature is clearly apparent from the language and "mode of expression" employed in this enactment. Its foremost purpose was to repeal SDC Chapter

11.12. It was also its purpose to save existing corporations formed thereunder.

No question is or could well be raised as to the effect or validity of the act but for the exception contained in Section 2; viz., "except that it shall be a bar to the expansion of any activity or power * * * authorized prior to and in effect at the effective date of this act."

█ Neither upon the trial nor upon this appeal has the severability of the act been urged, but it is our duty, under well established rules, to sustain the law in its entirety, if possible, and otherwise to sustain the valid portion thereof. State v. Morgan, 2 S.D. 32, 48 N.W. 314; Morrow v. Wipf, 22 S.D. 146, 115 N.W. 1121; Pugh v. Pugh, 25 S.D. 7, 124 N.W. 959, 32 L.R.A.,N.S., 954; State ex rel. Mills v. Wilder, 73 S.D. 330, 42 N.W.2d 891; 11 Am.Jur. 834; 50 Am. Jur. 491; 82 C.J.S. Statutes § 92, p. 149.

In Morrow v. Wipf, supra, [22 S.D. 146, 115 N.W. 1124], the following statement of the rule is set forth:

> "The fact that part of a statute is unconstitutional does not authorize the court to adjudge the remainder void, unless the provisions are so interdependent that one cannot operate without the other, or so related in substance as to preclude the supposition that the Legislature would have passed one without the other. The question is not whether valid and invalid portions are closely related in a particular clause or section, but whether they are essentially and inseparately connected in substance. Where the unobjectionable portion is distinct and complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that portion which is invalid, the former will be upheld."

The rejection of all of Section 2 of the act because of the alleged uncertainty of the questioned limiting clause would leave an act complete in itself repealing SDC Chapter 11.12. It was the very apparent intention of the legislature, however, to include a saving clause. We are of the opinion that if invalidity of the limitation contained in the saving clause

had been foreseen, the legislature would have enacted such saving clause without such limitation and would now wish the saving clause sustained with the limiting clause exscinded. If the limiting clause only be rejected, there would remain an act complete in itself, repealing SDC Chapter 11.12, while saving existing corporations created thereunder. Such a severance however would defeat a further purpose of the legislature to prevent the expansion of the activities and powers of such corporations, which purpose should not be thwarted unless necessary.

Appellant suggests that it is common knowledge that the general public is much concerned with the continued unrestricted purchase of land by communals and that it was this "evil" the legislature intended to remedy. We find nothing in the record indicating that legislative intent was thus limited. In 1953, the legislature removed certain powers of communal corporations authorized by SDC Chapter 11.12, as hereinbefore discussed, and by the present act clearly intended to permit no expansion of the powers "in effect" on July 1, 1955, the effective date of the act. Part of the powers authorized by Chapter 11.12 were not "in effect" at the time of the adoption of the act, because of the enactment of Chapter 18, Laws of 1953.

Had it been the only purpose of the legislature to prevent the acquisition of more land, we believe it would have spelled out this purpose in simple language. The general language employed, however, clearly indicates a much broader purpose which is presumed to be valid and capable of being effectuated.

In support of its contention that the act is void for uncertainty, respondent cites the following authorities, which are hereinafter discussed: 12 Am.Jur., Const.Law, § 585; 50 Am.Jur., Statutes, § 472; Amsel v. Brooks, 141 Conn. 288, 106 A.2d 152, 45 A.L.R.2d 1234; Boyce Motor Lines, Inc., v. U. S., 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367; In re Di Torio, D.C., 8 F.2d 279; McDougall v. Lueder, 389 Ill. 141, 58 N.E.2d 899, 156 A.L.R. 1059; State ex rel. Cooperative Wool Growers v. Bushfield, 69 S.D. 172, 8 N.W.2d 1; State v. Dove, 75 S.D. 460, 67 N.W.2d 917; State v. Lanesboro Produce & Hatchery

Co., 221 Minn. 246, 21 N.W.2d 792, 163 A.L.R. 1108; State ex rel. Olson v. Tarr, 61 S.D. 218, 248 N.W. 200; Ulrich v. Lincoln Realty Co., 180 Or. 380, 168 P.2d 582, 175 P.2d 149; United States v. Cardiff, 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200.

An analysis of these text statements and the results reached in these cases illustrates the ease with which abstract statements relating to statutory construction may be formulated and reiterated and how difficult is their application. Often the abstraction is found inapplicable to the confronting problem. As was stated by Mr. Justice Frankfurter in United States v. Universal C.I.T. Credit Corporation, 334 U.S. 218, 73 S.Ct. 227, 229, 97 L.Ed. 260, "Generalities about statutory construction help us little * * *. They do not solve the special difficulties in construing a particular statute. The variables render every problem of statutory construction unique."

A statute relating to civil conduct may be upheld even if considered too indefinite or vague for penal proscription. 82 C.J.S. Statutes § 68, p. 109.

The statement in 12 Am.Jur., Const.Law, § 585, is a brief recital of the rule that "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. On the other hand, where the words assailed, taken in connection with the context, are commonly understood, their use does not render a statute invalid. * * *

"A great many statutes have been sustained against the contention that they were so uncertain or indefinite that the enforcement thereof did not constitute due process of law."

50 Am.Jur., Statutes, § 472, quoted in the briefs, sets forth a general rule and is followed by § 473, which is as follows:

> "The basis of the principle that courts will not, in doubtful cases, pronounce a legislative act to be contrary to the Constitution, applies with equal force where the courts are called upon to declare a statute to be so meaningless and unintelligible as to be

inoperative, and there are many cases in which claims that particular statutes or statutory provisions are void for indefiniteness have been rejected. This is frequently illustrated in the construction of statutes regulating the operation of motor vehicles, and motor vehicle carriers, licensing of operators and other related matters. The use of such terms as 'reasonable' or 'unreasonable' in defining standards of conduct or in prescribing charges, allowances and the like, and the use of such terms as 'wilful and wanton misconduct' or 'gross negligence,' 'diligent effort,' 'dishonorable conduct,' 'incompetence,' 'violation of professional duty,' etc., have been held not to render a statute invalid for uncertainty and indefiniteness."

Amsel v. Brooks, supra [141 Conn. 288, 106 A.2d 156], was an action for a declaratory judgment that a penal statute is unconstitutional because not sufficiently explicit. The court said:

"It is a rule of statutory construction, however, that courts are bound to assume that the legislature, in enacting a particular law, did so upon proper motives and to accomplish a worthy objective. * * *

"The requirement of statutory specificity has the dual purpose of giving adequate notice of the acts which are forbidden and of informing an accused of the nature of the offense charged so that he may defend himself. The terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322. If, however, a practicable or sensible effect may be given to a penal statute, it is generally sustained. State v. Andrews, 108 Conn. 209, 213, 142 A. 840; State v. Zazzaro, 128 Conn. 160, 165, 20 A.2d 737; State v. Carpenter, 60 Conn. 97, 102, 22 A. 497; Pacific Coast Dairy v. Police Court, 214 Cal. 668, 676, 8 P.2d 140, 80 A.L.R.

1217; State Board of Dental Examiners v. Savelle, 90 Colo. 177, 185, 8 P.2d 693, 82 A.L.R. 1176; People v. Sarnoff, 302 Mich. 266, 270, 4 N.W.2d 544, 140 A.L.R. 1206. It must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements. People v. Grogan, 260 N.Y. 138, 145, 183 N.E. 273, 86 A.L.R. 1266. The statute under discussion meets this test. We hold that it is sufficiently explicit concerning what acts or conduct would be a violation of its provisions to meet constitutional requirements."

Boyce Motor Lines, Inc. v. U. S., supra [342 U.S. 337, 72 S.Ct. 330], was a criminal action in which appellant was indicted for knowingly violating an Interstate Commerce Commission regulation which provides as follows:

" 'Drivers of motor vehicles transporting any explosive, inflammable liquid, inflammable compressed gas, or poisonous gas shall avoid, so far as practicable, and, where feasible, by prearrangement of routes, driving into or through congested thoroughfares, places where crowds are assembled, street car tracks, tunnels, viaducts, and dangerous crossings.' The statute directs that '[w]hoever knowingly violates' the Regulations shall be subject to fine or imprisonment or both."

We quote from the opinion:

"The District Court dismissed those counts of the indictment which were based upon the Regulation in question, holding it to be invalid on the ground that the words 'so far as practicable, and where feasible' are 'so vague and indefinite as to make the standard of guilt conjectural.' 90 F.Supp. 996, 998. The Court of Appeals for the Third Circuit reversed, holding that the Regulation, interpreted in conjunction with the statute, establishes a reasonably certain standard of conduct. 188

F.2d 889. We granted certiorari. 342 U.S. 846, 72 S.Ct. 75, [96 L.Ed. 639].

"A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more that a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

The judgment affirmed that of the Court of Appeals remanding the cause to the District Court with instructions to reinstate the counts of the indictment based upon the regulation. In a dissenting opinion it is said, "Where the federal crime-making power is delegated to such a body, we are justified in requiring considerable precision in its exercise."

In re Di Torio, supra [8 F.2d 279], the District Court rendering the decision had under consideration the validity of the following provision in a naturalization law, "Provided, that it shall not be lawful to make a declaration of intention before the clerk of any court on election day or during the period of thirty days preceding the day of holding any election in the jurisdiction of the court." The court discussed the fact that the word "election" without more, was indefinite and held, "If the proviso is held to cover all elections in the territorial jurisdiction of the court, this court is without power to accept declarations of intention during almost eleven months of the year." The proviso was held void and the application to vacate the order admitting Di Torio to citizenship was denied.

In McDougall v. Lueder, supra [389 Ill. 141, 58 N.E.2d 905], the court had under consideration a statute relating to the regulation and licensing of Community Currency Exchanges, a section of which purported to require an application to do business to contain "such other information as the Auditor may require." The court said:

"The Auditor is left without any restraint whatsoever to interpret that phrase. It is possible that each succeeding Auditor may place substantially different interpretations on the meaning of the section with the result that applicants may at all times be subject to varying requirements. Subsection (c) of section 4, therefore, becomes vague, indefinite and uncertain and confers upon the Auditor arbitrary, unlimited and unrestrained power in direct conflict with the constitutional command that the Legislature may not delegate its legislative function to any person or body."

The court further said:

"There remains for determination, however, the question whether our view of the invalidity of subsection (c) of section 4 of the act necessitates the destruction of the entire act. The fact that a part of an act is unconstitutional does not require that the remainder shall be held void unless all the provisions are so connected as to depend upon each other. The valid and invalid provisions may even be contained in the same sentence and yet be perfectly distinct and separable so that the former may stand though the latter fall. If, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed wholly independently of that which is rejected, it must be sustained."

State ex rel. Cooperative Wool Growers v. Bushfield, supra, was an original proceeding in this court wherein plaintiff sought to compel the Governor to appoint to the State Livestock Sanitary Board some person recommended by the Cooperative Wool Growers Association of South

Dakota, and to prohibit an appointee to such Board from qualifying because not so recommended. The statute provided for a recommendation by South Dakota Wool Growers Association. Plaintiff's contention that the legislature intended to refer to plaintiff when enacting this statute was not sustained and the court dismissed the proceeding. This case has no bearing here.

State v. Dove, supra, related to a penal statute providing for a death penalty for its violation. A very strict application of the rule of definiteness and clarity was properly required.

State v. Lanesboro Produce Co., supra, was decided in 1946, while State v. Northwest Poultry and Egg Co., 203 Minn. 438, 281 N.W. 753, cited by appellant, was decided in 1938. Both cases involved the validity in a penal statute of the phrase "actual cost of transportation." In each case, general rules as to vague statutes are discussed at length; in the earlier case from which appellant quotes the rule that absolute certainty is not required, etc., a divided court found the statute too vague to be enforcible, while in the later case, after an extended discussion of the earlier decision, the court sustained the validity of the enactment and quoted from a dissenting opinion in the earlier case, as follows:

"That is not uncertain or vague which by the orderly process of litigation can be rendered sufficiently definite and certain for purposes of judicial decision. Hence, my submission is that the statute here involved is constitutional because its criteria of legal action are susceptible of reasonably certain and just application to facts presentable by evidence."

State ex rel. Olson v. Tarr, supra, an election held in Gregory County in 1932 resulted in a vote reducing the number of county commissioners from five to three. The law made no provision whatever as to the method of determining which members should continue to serve. The law was held void because too incomplete to be enforcible, and the election was of no effect.

Ulrich v. Lincoln Realty Co., supra, and United States v. Cardiff offer no assistance in this case.

These cases relied upon by respondent tend to emphasize the duty of the court to sustain legislative enactments, including penal statutes, rather than to strike them down for uncertainty, and this rule is supported by the great weight of authority.

A discussion of the great many cases examined would serve no useful purpose. Many are listed under Statutes Key 47 in The National Reporter System.

 The rule most often applied is to sustain enactments where the general intent of the legislature is capable of being understood. The fact that the language used is capable of more than one construction is not fatal, nor does the necessity of interpretation render an enactment void. As is stated in 82 C.J.S. Statutes § 68, p. 119, "An act which is capable of any reasonable and practical construction, or is susceptible to a logical and sensible construction in a reasonable sense, with due regard being given to its purpose, or which is fairly susceptible to definite interpretation, is not too vague to be enforced."

In Brink v. Dann, 33 S.D. 81, 144 N.W. 734, 741, the court said:

"A construction which will render effective and operative the general purpose existing in the legislative mind should be adopted rather than one which necessarily defeats such purpose. In an attempt to ascertain the legislative intent, the entire language and general purpose of the enactment relating to a particular subject-matter must be taken and considered together. Express words are not always required, where the purpose and intendment of an enactment as a whole are apparent."

The word "expansion" is a much used and well understood word and has been defined as synonymous with "enlargement." Webster's New World Dictionary.

The following statements are quoted from 15A Words and Phrases, Expansion, p. 396:

"Erection and maintenance of neon signs upon towers standing on realty in residence zone was not

a prohibited 'expansion' of nonconforming use of house on realty, where it was not shown that the advertising by neon signs would be followed by expansion or enlargement of nonconforming use. * * *

"Increase of volume of business on premises engaged in lawful nonconforming use is not alone an 'expansion' of a use within county zoning order requiring permit in such cases."

The word "activity" as used in this clause should be given its ordinary meaning which has been defined as "any specific action or pursuit." New World Dictionary. "Vocation or pursuit," Webster's Encyclopediac Dictionary, and in 2 Words and Phrases, Activity, p. 243, "The words 'occupation' and 'business' are synonyms of 'activity.' " The only "activity" in which the defendant corporation is or was engaged, within the contemplation of the act, is farming and stock raising.

SDC Chapter 11.12 granted several enumerated powers to the corporations granted charters thereunder; the "powers" referred to in the act are those same "powers." "Expansion of any * * * power * * * authorized prior to and in effect at the effective date of this act," refers to any power authorized by said chapter and still "in effect" at the effective date of the act. The contention that this limit of expansion of activities and powers might be construed to limit the number of members or curtail their individual activities is devoid of merit.

Perhaps uncertainty existed as to the powers of defendant at the time of the issuance of the charter, owing in part to the powers claimed in the articles of incorporation. It is possible that the extent of the modification or the limitation of the powers under the charter by Chapter 18 of the Laws of 1953 may require judicial determination. The condition that the repeal of SDC Chapter 11.12 shall be a bar to any expansion of such powers, without enumerating them, neither creates new uncertainty nor adds to any previously existing. The use of general terms is clearly permissible. The courts will always be open to such corporations and its

members to determine and define in proper cases the powers of and rights of such parties, and to enforce the requirement that "no injustice shall be done to the incorporators" contained in Article XVII, Section 9, of the South Dakota Constitution.

We fully concur in the views expressed in the memorandum decision of the trial court that the act embraces a single subject which is sufficiently expressed in its title. The act does not impair the obligations of a contract in view of the reserved powers as contained in our Constitution. No issue of religious freedom is involved as the constitutional provisions relating thereto are not applicable to corporations. We find no absence of due process of law and no abuse of the reserved powers hereinbefore discussed, and no discrimination against defendant or any other corporation chartered under the repealed law. We are of the opinion that the act, Chapter 15, of the Session Laws of 1955, should be sustained in its entirety.

We are of the opinion that when a corporation organized and existing under and by virtue of SDC 11.12, shall subsequent to the effective date of the act, use more land in its agricultural activities than it has so used prior thereto, that this would constitute an expansion of the activities of such corporation in violation of the provisions of the act.

The trial court in this case found that in 1953, the defendant leased the eighty acres in question, was unable to lease the same in 1954, but leased other land in lieu thereof. It is not claimed by plaintiff that the defendant was guilty of any bad faith in making the purchase of said tract, nor is any such indicated. Under this state of facts, we are of the opinion that the purchase of the eighty acres under these circumstances did not constitute an unlawful expansion of the activities or powers of the defendant corporation.

The judgment of the trial court is modified by striking therefrom the paragraph wherein the court adjudges and decrees that Chapter 15, of the Laws of 1955. is too vague, indefinite, and uncertain to be enforceable, and is void for

want of due process of law, and as so modified, the judgment of the lower court is affirmed.

No costs may be taxed in this court.

SMITH and BOGUE, JJ., concur.

ROBERTS, J., concurs in the result in so far as it approves the judgment below dismissing the proceedings.

RENTTO, P.J., concurs with ROBERTS, J.

KNIGHT, Circuit Judge, sitting for HANSON, J., disqualified.